**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Pedro GREEN, Appellant.**

Superior Court of Pennsylvania.

Submitted July 28, 2008.
Filed Sept. 22, 2008.

Elayne Bryn, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: MUSMANNO, BENDER and COLVILLE *, JJ.

OPINION BY BENDER, J.:

¶ 1 Pedro Green (Appellant) appeals from the order dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546. Appellant claims that trial counsel rendered ineffective assistance by failing to file a post-sentence motion challenging the excessiveness of Appellant's sentence. For the reasons that follow, we reverse.

¶ 2 The trial court summarized the factual and procedural history of this case as follows:

On September 8, 2000, at approximately 1:20 p.m., Police Officer Richard Gramlich of the Narcotics Unit set up surveillance of the 2900 block of North Orkney Street in Philadelphia. He observed Appellant standing in front of an abandoned property at 2913 North Orkney Street. Appellant then walked into his sister's house located at 2917 North Orkney Street. Shortly thereafter, Appellant emerged and walked back to the property at 2913 and entered. One minute later, Appellant exited the property and walked to the corner of Orkney and Cambria Streets. While he stood on the corner, a white Nissan pulled up in front of the property at 2913 and the driver, Melissa McClure, waved towards Appellant who then whistled. In response, Mario Gonzalez, who was standing in front of 2917 North Orkney, looked at Appellant and then walked into 2913. Gonzalez returned a few seconds later, went to the driver's side window of the

white Nissan and after a brief conversation with McClure handed her small objects in exchange for United States currency. After this exchange, McClure drove away and Appellant approached Gonzalez. Gonzalez handed Appellant the money given to him by McClure (N.T. 6/11/00, 77–84).

Officer Gramlich informed back-up officers of his observations and provided them with a description of McClure's white Nissan. Officer David Medena stopped McClure and recovered eight clear heat-sealed packets each of which contained a blue glassine packet of heroin. (N.T. 6/11/00, 82–84, 6/12/00, 15, 45–47).

Five minutes later, Fernando Arce approached Appellant who was standing near 2913. After a brief conversation, Appellant entered the property at 2913. After he returned a few seconds later, Appellant handed Arce small items in exchange for United States currency. Officer Gramlich informed back-up officers of his observations and provided them with a description of Arce. Officer Wayne Taylor stopped Arce and recovered six packets of crack cocaine and one blue packet of marijuana. Each packet of crack cocaine was blue on one side and clear on the other with a gold crown stamp. (N.T. 6/11/00, 85–88, 107–108; 6/12/00, 45–47). Shortly thereafter, Pedro Maldez approached Appellant. After a brief conversation, Appellant entered the property at 2913. He returned ten seconds later and, in exchange for United States currency, Appellant handed Maldez small items. Officer Gramlich informed back-up officers of his observations and provided them with a description of Maldez. Officer

* Retired Senior Judge Assigned to the Superior Court.

Louis Hardy stopped Maldez and recovered twelve packets of crack cocaine. These packets were also blue on one side and clear on the other with a gold crown stamp (N.T. 6/11/00, 89–90; 6/12/00, 5–7, 45–47).

Approximately ten minutes later, James Taylor approached Appellant and after a brief conversation, Appellant again entered the property at 2913. When he emerged a few seconds later, in exchange for United States currency, Appellant handed Taylor small items. Officer Gramlich again informed back-up officers of his observations and provided them with a description of Taylor. Officer John Ramirez stopped Taylor and recovered two packets of crack cocaine. These packets were also blue on one side and clear on the other with a gold crown stamp (N.T. 6/11/00, 90–91; 6/12/00, 10–11, 45–47).

Based on information from Officer Gramlich, back-up officers arrived in marked patrol cars to the 2900 block of North Orkney Street. When Officer Marvin King approached Appellant, he fled into the property located at 2913. Officer King pursued Appellant into the abandoned house and saw Appellant throw an amber-colored pill bottle. Inside were twenty packets of crack cocaine that were blue on one side and clear on the other with a gold crown stamp. Officers also recovered from the property at 2913 were [sic] thirty-two yellow-tinted packets of marijuana and two amber-colored pill bottles containing a total of one-hundred and thirteen Xanax pills. (N.T. 6/11/00, 94–96; 6/12/00, 20–25, 45–47).

On September 21, 2000, Officer Roberto Fontan set up a narcotics surveillance of the 2900 block of North Orkney Street. He saw Appellant, who was free on bail from his September 8 arrest, once again standing in front of the abandoned property located at 2913. After a few minutes, Joseph Folker approached Appellant. After a brief conversation, Folker gave Appellant United States currency. Appellant then went into the property at 2913 and when he returned a few seconds later, he handed Folker small items. Based on information from Officer Fontan, Officer Menela stopped Folker and recovered fourteen packets of crack cocaine. Like the packets of crack cocaine Appellant sold on September 8, these packets were blue on one side and clear on the other with a gold crown stamp (N.T. 6/12/00, 86–89; 6/13/00, 8–9).

A few minutes later, Lisa Coratolo exited a silver Mercury Sable and approached Appellant. After a brief conversation, she handed Appellant United States currency. Appellant then entered the property at 2913 and when he returned a few seconds later, Appellant handed her small items. Coratolo returned to her car and left the scene. Based on information received from Officer Fontan, Officer Butz stopped Coratolo and recovered eleven packets of heroin, six packets of crack cocaine that were blue on one side and clear on the other with a gold crown stamp and seven blue Xanax pills (N.T. 6/12/00, 89–90; 6/13/00, 9–12).

Based on information from Officer Fontan, back-up officers arrested Appellant. The officers recovered $602 cash from Appellant (N.T. 6/12/00, 11).

On June 11, 2001, Appellant appeared before this Court for the events which occurred on September 8, 2000 (Bill No. 0456, November Term, 2000). On June 12, 2001, a jury found him guilty of possessing a controlled substance with the intent to deliver and criminal conspiracy. On June 13, 2000, Appellant again appeared before this Court for the

events which occurred on September 21, 2000 (Bill No. 0270, November Term, 2000) and pursuant to a negotiated guilty plea, pled guilty to possessing a controlled substance with the intent to deliver it. On August 15, 2001, with regards to his convictions at Bill No. 0456, this Court sentenced Appellant to consecutive terms of ten to twenty years, respectively. With regards to his conviction at Bill No. 0270, this Court sentenced Appellant to a concurrent term of ten to twenty years.

Appellant did not appeal. On July 12, 2002, Appellant filed a petition for post-conviction relief. Counsel was appointed and filed an amended petition alleging that prior counsel was ineffective for not filing a direct appeal. After a hearing, this Court granted Appellant's petition and reinstated his direct appeal rights nunc pro tunc.

Appellant filed his nunc pro tunc appeal and, on February 28, 2005, the Pennsylvania Superior Court affirmed the judgments of sentence. Appellant filed a petition for allowance of appeal in the Pennsylvania Supreme Court, which denied allocator on September 9, 2005.

On December 4, 2006, Appellant filed a petition for post-conviction relief. Counsel was appointed and filed an amended Petition, the July 26, 2007 dismissal of which is the basis for this appeal.

Trial Court Opinion (T.C.O.), 12/27/07, at 1–5. In this appeal, Appellant presents one question for our review:

1. Whether the PCRA court erred in denying PCRA relief because trial counsel failed to preserve the discretionary aspect of sentencing.

Brief for Appellant at 2.

■■■ ¶ 3 "Our standard of review for an order denying post-conviction relief is limited to whether the trial court's deter-mination is supported by evidence of record and whether it is free of legal error." *Commonwealth v. Allen,* 557 Pa. 135, 732 A.2d 582, 587 (1999).

In evaluating claims of ineffective assistance of counsel, we presume that counsel is effective. To overcome this presumption, Appellant must establish three factors. First, that the underlying claim has arguable merit. Second, that counsel had no reasonable basis for his action or inaction. In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis. Finally, Appellant must establish that he has been prejudiced by counsel's ineffectiveness; in order to meet this burden, he must show that but for the act or omission in question, the outcome of the proceedings would have been different.

*Commonwealth v. Washington,* 592 Pa. 698, 927 A.2d 586, 594 (2007) (citations and quotation marks omitted).

■■■ ¶ 4 Appellant claims that his trial counsel rendered ineffective assistance by not filing a post-sentence motion challenging the excessiveness of his sentence. We begin by examining Appellant's sentence. On Appellant's convictions for possession with intent to deliver and criminal conspiracy arising from Bill Number 0456, the court sentenced Appellant to two terms of ten to twenty years' imprisonment to be served consecutively. On Bill Number 2070, Appellant pled guilty to the charge of possession with intent to deliver and received a sentence of ten to twenty years' imprisonment to be served to concurrently to No. 0456. Thus, Appellant received an aggregate sentence of twenty to forty years' imprisonment.

¶5 The parties agree that Appellant's prior record score was two, arising from a single conviction for possession with intent to deliver and that the offense gravity score was six. During sentencing, the court noted that these scores result in a recommended sentence of nine to sixteen months, plus or minus six months for a mitigated or aggravated sentence. N.T., 8/15/01, at 7. *See also* 204 Pa.Code § 303.16 (Basic Sentencing Matrix). Thus, an aggravated sentence would be twenty-two months. Here, Appellant was sentenced to a minimum of 120 months, over five times the aggravated sentence.

¶6 The court stated that it deviated from the guidelines for several reasons. First, it considered Appellant's prior conviction, which was already factored into the offense gravity score, and the fact that after serving his time for this conviction, he returned to the same location and began dealing drugs again. *Id.* at 8. The court also noted that Appellant had been receiving social security benefits, though there is no indication why this would warrant a harsher sentence. The court recited the facts underlying the convictions, namely that there were drugs on the premises that matched the drugs taken from the buyers and that $1,500 was found on the premises. Yet, this is hardly noteworthy. The court also referred to the fact that Appellant was involved in a conspiracy. But of course Appellant was also convicted for criminal conspiracy. Finally, the court noted that the drug dealing occurred in a low-income area. In short, all of the factors referred to .by the judge were either: (1) part of Appellant's offense gravity and prior record scores; (2) part of the facts underlying his convictions; or (3) facts common to most drug dealing cases, i.e., cases which involve recidivist offenders dealing drugs in low income areas. Thus, the court did not state anything that would distinguish this case from any other garden variety drug dealing case.

¶7 Despite this, trial counsel decided not to file a post-sentence motion challenging the excessiveness of Appellant's sentence even though the court had twice sentenced her client to terms of incarceration in excess of five times the aggravated range. "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing." *Commonwealth v. Evans,* 901 A.2d 528, 533–34 (Pa.Super.2006) (citations and quotation marks omitted).

¶8 Clearly, there is arguable merit to the claim that counsel should have either made a motion at the sentencing hearing or filed a post-sentence motion challenging the sentence. Regarding the second prong of an ineffectiveness claim, we cannot conceive of a reasonable basis for counsel's inaction. Counsel's omission is especially stark when one considers the following discussion that occurred between counsel and Appellant after he was sentenced.

> The Defendant: You mean that I could do an application, like a motion for reconsideration of the sentence?
> [Defense Counsel]: Yes.
> The Defendant: Can I do that right now?
> [Defense Counsel]: No. That has to be done in writing.

*Id.* at 11–12. Under these circumstances, we find defense counsel's decision to ignore Appellant's request to move for reconsideration of the sentence especially troublesome.

¶9 Finally, we address the prejudice prong. In order to establish prejudice, a petitioner must establish "a reasonable probability that but for counsel's

action [or inaction], the result of the proceedings would have been different." *Commonwealth v. DiNicola*, 581 Pa. 550, 866 A.2d 329, 336 (2005). While the trial court indicated that had counsel filed a post-sentence motion challenging the excessiveness of Appellant's sentence, the court would have denied it, we nonetheless conclude that had the issue been preserved for our review, based on our foregoing discussion, there is a reasonable probability that this Court would have reversed the judgment of sentence.

¶ 10 In conclusion, we reiterate that the trial court sentenced Appellant, a sixty-one year old, to what is essentially a life sentence. The sentence for twenty to forty years means that Appellant will be at least eighty-one at his earliest release date and may very well die in prison. At a time when our prisons are facing problems of overpopulation and the annual costs of imprisonment for one inmate are approaching $34,000 per year, one cannot help but question the socio-economic efficacy of the trial court's sentence.[1] Thus, the court's sentence is going to cost the taxpayers of this Commonwealth at least $680,000 and potentially as much $1.36 million. This does not include the fact that Appellant is suffering from medical conditions that will surely deteriorate as he grows older, thereby costing the Commonwealth even greater sums for healthcare. If Appellant was a violent felon, one could understand the rationale for expending so much money on imprisonment. But for a non-violent street-level drug dealer to receive such a sentence is beyond the pale. If our judicial system were to adopt the policy of the trial court in the instant case, it would surely bankrupt the Department of Corrections.

¶ 11 Based on the foregoing discussion, this Court has no doubt that trial counsel rendered ineffectiveness by not challenging the sentence. Consequently, the PCRA court erred in denying Appellant's request to file a post-sentence motion *nunc pro tunc*. We further note that our decision here is consistent with this Court's recent decision requiring trial courts to grant Appellants the right to file post-sentence motions whenever the right to file an appeal *nunc pro tunc* has been granted. *See Commonwealth v. Liston*, 941 A.2d 1279, 1280 (Pa.Super.2008) (en banc).

¶ 12 Order reversed.

¶ 13 Judge COLVILLE files a concurring and dissenting opinion.

## CONCURRING AND DISSENTING OPINION BY COLVILLE, J.:

¶ 1 I concur there is arguable merit to Appellant's claim. However, I would not make a finding at this time as to whether counsel lacked a reasonable basis for not filing a motion for reconsideration of sentence. Rather, I would remand this case for an evidentiary hearing to inquire as to counsel's reasons for not doing so. *Commonwealth v. Williams*, 587 Pa. 304, 899 A.2d 1060, 1065 (2006). Also, I would not make a finding of prejudice at this juncture.

---

1. *See* The Pew Charitable Trust's *Public Safety, Public Spending:* http://www.pewtrusts.org/uploadedFiles/wwwpewtrustsorg/Reports/ State-based_policy/PSPP_prison_projections_0207.pdf.