COMMONWEALTH of Pennsylvania,
Appellee

v.

Brandon Denzel CHARLESTON,
Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 5, 2013.

Filed June 6, 2014.

Reargument Denied Aug. 7, 2014.

Burton A. Rose, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: PANELLA, J., OLSON, J., and PLATT, J.*

OPINION BY PLATT, J.:

Appellant, Brandon Denzel Charleston, appeals from the order dismissing his counseled first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541–9546, without a hearing, as without merit. Appellant claims ineffective assistance of trial counsel. We affirm.

On August 25, 2009, a jury convicted Appellant of murder of the first degree, 18 Pa.C.S.A. § 2502(a), and possessing an instrument of crime with intent to employ it criminally (PIC), 18 Pa.C.S.A. § 907(a). Appellant's conviction arose out of his fatal shooting of William Stanton, a long-time friend, on June 15, 2008, at the home of Tracey Leslie, 2428 North 25th Street, in North Philadelphia.

At the time of the shooting, Appellant and Stanton were the only people in the house. Appellant claimed Stanton pulled a gun on him in an argument over the purchase of Xanax pills.[1] At trial, the Commonwealth acknowledged that Stanton was a drug dealer in the neighborhood. (See N.T. Trial, 8/18/09, at 180–81).

Appellant, who testified on his own behalf at trial, maintained that he acted in self-defense.[2] (See, e.g., N.T. Trial, 8/24/09, 41) ("I thought he was going to kill me. You know, I was fearing for my life."); see also Commonwealth v. Charleston, 16 A.3d 505, 508 (Pa.Super.2011), appeal denied, 612 Pa. 696, 30 A.3d 486 (2011) ("The evidence adduced at trial showed that Appellant shot and killed William Stanton (the victim). Appellant claimed, in a statement to the police and at trial, that he acted in self defense.").

According to Appellant, the shooting occurred after he tried to bargain with Stanton for more Xanax pills with the same amount of money. (See N.T. Trial, 8/24/09, at 38–39; 71–73). He claimed that Stanton pulled a handgun, and the two struggled over the weapon. (See id. at 40–41). Appellant admitted he shot Stanton three times. (Id. at 42) ("You know, pow, pow, pow. It wasn't drawn out like, you know, it happened and then it happened and happened. It happened all at once. It happened all at once."). Appellant testified that he left the house and threw the gun into a sewer outside the house. (See id. at 44). However, the handgun was never recovered.

Stanton received three gunshot wounds: a horizontal wound to the chest, a downward wound to the right lower part of the abdomen, and a downward wound to the thigh exiting out the side of the right knee. (See N.T. Trial, 8/21/09, at 79–80). When Tracey Leslie returned to his house he found Stanton lying on the floor face down. He called 911. Stanton was pronounced dead at Temple University Hospital at 3:46 p.m. on the same day by Dr. Julie Toto. (See N.T. Trial, 8/21/09, at 68).

About a month later, on July 16, 2008, while the police were investigating an un-

---

* Retired Senior Judge assigned to the Superior Court.

1. Xanax is a sedative-type drug prescribed to alleviate anxiety; it is also used as a drug of abuse. (See N.T. Trial, 8/21/09, at 86).

2. See 18 Pa.C.S.A. § 505.

related gang murder, the mother of the victim in this case, Clara Stanton, approached Officer Anthony Soliman and told him that the man he was interviewing in the police car, Appellant, had shot her son, William Stanton. (*See* N.T. Trial, 8/20/09, at 61, 171–72). Officer Soliman asked Appellant if he knew anything about William Stanton. He said "[N]o, I don't." (*Id.* at 176).

Officer Soliman transported Appellant to the Homicide Unit where detectives determined that he could not be interviewed because he was intoxicated. (*See id.* at 177; N.T. Trial, 8/21/09, at 150). Homicide Detective Greg Singleton interviewed Appellant the next day. (*See* N.T. Trial, 8/21/09, at 151). After receiving *Miranda*[3] warnings, Appellant gave a statement to Detective Singleton and his partner Detective Dove, which he then read and signed.[4] (*See id.* at 168–69). As already noted, Appellant claimed self-defense. The statement was read into the trial record. (*See id.* at 168) ("It was self defense. It's not like I pointed it at him and shot him or nothing like that.").

At trial, after Appellant's direct testimony, on cross-examination the Commonwealth established numerous inconsistencies in his various versions of the incident, perhaps most notably his denial that he had any knowledge that the victim had been shot when he left the house. (*See* N.T. Trial, 8/24/09, at 133) ("I couldn't believe that. **I didn't even know that he was shot.** I just tried to, you know, I thought he was shot because he wasn't answering me when I was talking to him, but I didn't know for sure that he was shot.") (emphasis added).

During their investigation of the homicide the police determined that Ms. Stanton's belief that Appellant had shot her son, which prompted her to alert the police, stemmed from a general understanding in the neighborhood, or "word on the street." (N.T. Trial, 8/20/09, at 130; *see also id.* at 180).

At trial, the Commonwealth also attempted to elicit specific testimony from Nashua Sanders, a relative of Ms. Stanton's neighbors, that she had told Ms. Stanton that Appellant, with whom she was friends, had told her a week before the murder that he planned to rob William Stanton. However, on the stand, Ms. Sanders denied making the statement, or speaking at all with Ms. Stanton, beyond giving her condolences.[5] (*See id.* at 35).

Ms. Stanton testified that on the day her son was killed he had between $600 to $650 on his person. (*See id.* at 45). He was also carrying a black wallet and a Pennsylvania ID card. (*See id.* at 47). Ms. Stanton never saw these items again. (*See id.*). Detective Kevin Judge testified that when he did a full body inspection of William Stanton for the homicide investigation at Temple University Hospital, he found Stanton's clothes, in a bag, a set of keys, a cell phone, and three dollars. (*See id.* at 96).

Later in the trial the Commonwealth recalled Ms. Stanton. The trial court permitted Ms. Stanton to testify that Ms. Sanders had told her that Appellant told her (Ms. Sanders) that he planned to rob William Stanton, as a statement inconsistent with Ms. Sanders' denial at trial. (*See id.* at 112). Immediately after Ms. Stanton completed her testimony, the trial

---

**3.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** Detective Dove's first name is not provided in the trial transcript.

**5.** Ms. Sanders admitted she had told Detective Williams that she was fearful for herself and her family if she testified against Appellant. (*See* N.T. Trial, 8/20/09, at 38).

court gave the following cautionary instruction, *sua sponte:*

> Ladies and gentlemen, with regard to the testimony that you just heard, I'm just going to give you an instruction and that evidence is not necessarily to be accepted for the truth of the statements made by Ms. Sanders to Ms. Stanton, okay. It doesn't—they were statements and you will be given additional instructions at the appropriate time.
>
> Okay, next witness.

(*Id.* at 116).[6]

Dr. Sam Gulino, the Chief Medical Examiner for the City of Philadelphia, testified as an expert in forensic pathology for the Commonwealth. (*See* N.T. Trial, 8/21/09, at 62–95). Dr. Gulino testified that, based on the nature of the wounds and the amount of soot from gunpowder residue on the clothing and the wounds, the wound to the chest was "within [a] range of eight inches," (*id.* at 78), the wound to the abdomen in the pelvic region a greater distance, but less than three feet, (*see id.*), and the wound to the thigh, two feet or more (*see id.* at 79). Mr. Gamal Emira, testifying without objection as an expert in forensic science, reached similar conclusions about the range of fire for the three wounds. (*See id.* at 106–10).

Officer Louis Grandizio, of the Philadelphia Police Firearms Identification Unit testified for the Commonwealth as an expert in ballistics evidence, by agreement of defense counsel. (*See id.,* at 116–46). Officer Grandizio testified that for a handgun to fire three times, the trigger would have to be pulled three separate times. (*See id.* at 128). In his expert opinion, because of the six to seven pounds of pressure required to pull the trigger, the ejection of the spent cartridge, and the natural recoil of the handgun, it could not have fired three or four times in rapid succession during a struggle for possession, as maintained by the defense. (*See id.* at 129–131). Officer Grandizio testified that in his expert opinion, in the kind of struggle described by the defendant, the gun would probably jam after the first round was fired. (*See id.* at 132).

In his closing argument, defense counsel stressed that his client was "quite candid with you in terms of what happened[.]" (N.T. Trial, 8/24/09, at 156). Counsel also noted that "despite the fact that he [Appellant] didn't have to say nothing [sic] was eager to see him [Homicide Detective Greg Singleton] and was eager to tell just what happened." (*Id.* at 157). Similarly, trial counsel argued that ("[Appellant] had nothing to hide. And he [Appellant] told [Detective Singleton] just what happened."). (*Id.* at 158).

During closing argument for the Commonwealth, the prosecutor first compared the credibility of the testimony of Nashua Sanders to that of Clara Stanton, the victim's mother. (*See id.* at 168–69). The prosecutor also challenged Appellant's credibility by highlighting some of the inconsistencies in his testimony, specifically characterizing his claim of self-defense as a "joke," "nonsense," and "potentially some of the craziest testimony that has been heard in this city." (*Id.* at 192–93).

The trial court instructed the jury that evidence of Appellant's prior criminal convictions, introduced by stipulation, (*see id.* at 145–46), was not evidence of Appellant's guilt, but could be used by the jury to help them judge the credibility and weight of the testimony given by him at trial. (*See id.* at 227).

On August 25, 2009, the jury convicted Appellant of murder of the first degree,

---

**6.** Although the trial court later gave the jury other general instructions, no further instruction on this point was given.

and possession of an instrument of crime with intent. (*See* N.T. Trial, 8/25/09, at 8; *see also* Verdict Slip, 8/25/09). At the request of defense counsel, the court polled the jury. (*See* N.T. Trial, 8/25/09, at 8–10). The verdict was unanimous on both counts. (*See id.*).

On September 23, 2009, the trial court sentenced Appellant to life imprisonment on the murder conviction and to a concurrent term of not less than three months nor more than twenty-four months' imprisonment on the PIC conviction. The court denied Appellant's post sentence motion on October 6, 2009. On direct appeal, this Court affirmed Appellant's judgment of sentence in a published opinion. (*Commonwealth v. Charleston*, 16 A.3d 505 (Pa.Super.2011)).[7] Our Supreme Court denied allowance of appeal on September 27, 2011. (*Commonwealth v. Charleston*, 612 Pa. 696, 30 A.3d 486 (2011)).

Appellant timely filed the instant counseled petition for PCRA relief on February 2, 2012, claiming ineffective assistance of trial counsel.[8] The Commonwealth responded with a motion to dismiss filed on June 12, 2012. The PCRA court filed notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907, on November 2, 2012, and as already noted, dismissed it, expressly denying relief, on November 26, 2012. This timely appeal followed.[9]

Appellant presents four questions for our review:

I. Was the Appellate [sic] denied effective assistance of counsel for the failure to request a proper limiting instruction regarding a hearsay statement attributed to Nashua Sanders by Commonwealth witness Clara Stanton that was used as substantive evidence of Appellant's intent to commit murder and robbery?

II. Did trial counsel provide ineffective assistance in failing to object to prosecutorial misconduct in the prosecutor's closing speech to the jury suggesting that the Appellant had a motive to commit robbery [sic] due to unemployment [sic] and that the Appellant's testimony lacked credibility [sic]?

III. Did trial counsel provide ineffective assistance by failing to object when the trial court instructed the jury that the prosecution had proven that the Appellant had "a bad reputation for telling the truth"?

IV. Did trial counsel provide ineffective assistance of counsel by failing to request that the jury be instructed regarding involuntary manslaughter and/or homicide by misadventure?

(Appellant's Brief, at 3).

Our standard and scope of review for the denial of a PCRA petition is well-settled.

---

**7.** For clarity and completeness, we note that Appellant mis-cites our prior decision as "16 A.3d 105" in his brief. (*See* Appellant's Brief, at 8).

**8.** On August 22, 2012, Appellant also filed a *pro se* PCRA petition, chiefly seeking relief under *Miller v. Alabama*, — U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) (holding that mandatory life imprisonment without parole for those under the age of eighteen at the time of their crimes violates the Eighth Amendment's prohibition on cruel and unusual punishments). The PCRA court properly disregarded the *pro se* petition, which was impermissible hybrid representation. *See Commonwealth v. Jette*, 611 Pa. 166, 23 A.3d 1032, 1044 (2011). In any event, Appellant's *Miller* claim has no merit. Appellant concedes that at the time of the crime he was two weeks short of twenty-one years old. (*See* Petition, 8/22/12, at 1).

**9.** On December 24, 2012, Appellant filed a Statement of Errors to be Complained of on Appeal. *See* Pa.R.A.P.1925(b). The trial court filed a Rule 1925(a) opinion on January 11, 2013. *See* Pa.R.A.P.1925(a).

[A]n appellate court reviews the PCRA court's findings of fact to determine whether they are supported by the record, and reviews its conclusions of law to determine whether they are free from legal error. The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level.

*Commonwealth v. Spotz*, —— Pa. ——, 84 A.3d 294, 311 (2014) (citations and internal quotation marks omitted).

In this appeal, all of Appellant's claims challenge the effectiveness of trial counsel.

[A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. 42 Pa.C.S. § 9543(a)(2)(ii). Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. In Pennsylvania, we have refined the *Strickland* [*v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)] performance and prejudice test into a three-part inquiry. *See* [*Commonwealth v.*] *Pierce* [, 515 Pa. 153, 527 A.2d 973 (1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. If a petitioner fails to prove any of these prongs, his claim fails. Generally, counsel's assistance is deemed constitu-

tionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. Where matters of strategy and tactics are concerned, a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.

*Id.* at 311–12 (most case citations, internal quotation marks and other punctuation omitted). Our Supreme Court added:

As a general and practical matter, it is more difficult for a defendant to prevail on a claim litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error. *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d 455, 472 (2004). This Court has addressed the difference as follows:

[A] defendant [raising a claim of ineffective assistance of counsel] is required to show actual prejudice; that is, that counsel's ineffectiveness was of such magnitude that it 'could have reasonably had an adverse effect on the outcome of the proceedings.' *Pierce*, 515 Pa. at 162, 527 A.2d at 977. This standard is different from the harmless error analysis that is typically applied when determining whether the trial court erred in taking or failing to take certain action. The harmless error standard, as set forth by this Court in *Commonwealth v. Story*,

476 Pa. [391], 409, 383 A.2d [155], 164 [ (1978) ] (citations omitted), states that "[w]henever there is a '**reasonable** possibility' that an error 'might have contributed to the conviction,' the error is not harmless." This standard, which places the burden on the Commonwealth to show that the error did not contribute to the verdict beyond a reasonable doubt, is a lesser standard than the *Pierce* prejudice standard, which requires the defendant to show that counsel's conduct had an actual adverse effect on the outcome of the proceedings. This distinction appropriately arises from the difference between a direct attack on error occurring at trial and a collateral attack on the stewardship of counsel. In a collateral attack, we first presume that counsel is effective, and that not every error by counsel can or will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. *Pierce, supra.*

*Gribble,* 580 Pa. at 676, 863 A.2d at 472 (emphasis in original).

*Id.* at 315. Similarly, this Court has explained:

To overcome the presumption of effectiveness, Appellant must establish three factors: first that the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced. Counsel's assistance is **deemed constitutionally effective** once this Court determines that the defendant has not established any one of the prongs of the ineffectiveness test.

*Commonwealth v. Rolan,* 964 A.2d 398, 406 (Pa.Super.2008) (citations and internal quotation marks omitted) (emphasis in original).

This Court has also explained: "The Pennsylvania Superior Court has held that Appellant's claims 'must meet all three prongs of the test for ineffectiveness, if the court can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing.'" *Commonwealth v. Jones,* 942 A.2d 903, 906 (Pa.Super.2008), *appeal denied,* 598 Pa. 764, 956 A.2d 433 (2008) (citation omitted).

In this appeal, three of Appellant's four ineffectiveness issues claim the failure to request or object to jury instructions.

[Our Supreme] Court has recognized that counsel are not constitutionally required to forward any and all possible objections at trial, and the decision of when to interrupt oftentimes is a function of overall defense strategy being brought to bear upon issues which arise unexpectedly at trial and require split-second decision-making by counsel. Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do.

*Commonwealth v. Koehler,* 614 Pa. 159, 36 A.3d 121, 146 (2012) (case citations, internal quotation marks and other punctuation omitted).

In his first issue, Appellant asserts that trial counsel should have requested a "proper limiting instruction" for the testimony by Ms. Stanton repeating the statement made to her by Nashua Sanders. (Appellant's Brief, at 3). He contends that the statement was used as substantive evidence of his intent to commit murder and robbery. (*See id.*). We disagree.

■ Appellant argues that the contemporaneous instruction given *sua sponte* by the trial court was "equivocal" and trial counsel was ineffective for "failing to de-

mand a jury instruction that would have made it unequivocally clear that the statement of Nashua Sanders was not, under any circumstances, to be considered for the truth of its content." (*Id.* at 12; *see also id.* at 7–13). Appellant argues that "he was surely prejudiced." (*Id.* at 13). This issue is waived and would not merit relief.

 Preliminarily, we are mindful that:

[W]hen evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to determine if the instructions were improper. We further note that, it is an unquestionable maxim of law in this Commonwealth that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error.

*Commonwealth v. Antidormi*, 84 A.3d 736, 754 (Pa.Super.2014) (citations omitted).

Next, we note that, aside from the cursory conclusion that "he was surely preju-

diced" and a bald citation to *Strickland, supra,* and citation to authority on direct appeal, Appellant fails to develop an argument or present **pertinent** authority that the court's use of the colloquial expression "not necessarily" rendered its instruction fatally equivocal.[10] (*See* Appellant's Brief, at 12–13).

Similarly, he fails to develop an argument that counsel had no reasonable basis not to request an additional instruction, or a reasonable probability that, but for counsel's alleged unprofessional error in not requesting a second instruction, the result of the proceedings would have been different. (*See id.* at 7–13). Therefore, Appellant fails to establish any of the three prongs of the *Pierce* test. Accordingly, Appellant's first issue is waived. *See Spotz, supra* at 311–12.

 Furthermore, Appellant's challenge to the jury instruction which the trial court actually gave does not have merit. Appellant's claim focuses on an isolated portion of the charge, contrary to long-settled law, and ignores the "unquestionable maxim of law … that a trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law

---

**10.** Instead, Appellant cites *Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808 (1989), and *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974). (*See* Appellant's Brief, at 12). Both were direct appeals. Both are distinguishable.

In *Palsa*, our Supreme Court decided that, on the facts of that case, an out-of-court statement [that appellant had sought to buy fifteen pounds of marijuana with intent to distribute—(the crime for which he was being tried)] by an informant, who by the time of trial was a fugitive from justice unavailable to testify, was improperly admitted to explain the course of police conduct leading to appellant's arrest. *See Palsa, supra* at 810–11. None of those facts pertain here. Notably, the *Palsa* Court added: "This balancing process is governed by the sound discretion of

the trial court, and, as with other evidentiary decisions, the trial court's decision will be upheld on appeal unless there has been an abuse of that discretion." *Id.* at 811 (citation omitted).

In *Toth*, our Supreme Court granted a new trial after the district attorney argued that because defense counsel offered an indirectly exculpatory out-of-court statement not for its truth, but to show the statement was made, he apparently didn't believe it himself. (The declarant had testified, over the prosecutor's objection, that two fellow inmates told him they planned to implicate appellant falsely in the burglary at issue, to get leniency for themselves.). The Supreme Court noted that **no** cautionary instruction was given. *See Toth, supra* at 277 n. 2.

is clearly, adequately, and accurately presented to the jury for its consideration." *Antidormi, supra* at 754; *see also Commonwealth v. Daniels,* 600 Pa. 1, 963 A.2d 409, 432 (2009) (rejecting challenge to arguably problematic excerpt from jury charge on accomplice liability in first-degree murder case, after reviewing charge in its entirety).

Additionally, in his question and argument section Appellant merely assumes that the statement at issue was introduced by the Commonwealth as substantive evidence of Appellant's intent to commit "murder and robbery," rather than as evidence of an inconsistent statement.[11] (Appellant's Brief, at 3; *see also id.* at 8–9). He does not develop an argument in support of the bald claim. Instead, he relies on a lengthy quotation from the prosecutor's closing statement. (*See id.* at 9–11 (quoting N.T. Trial, 8/24/09, at 167–70)).[12] However, he does not develop an argument or offer pertinent authority in support of the specific claim that the prosecutor used the statement improperly, or that trial counsel ineffectively failed to object for that reason. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Beshore,* 916 A.2d 1128, 1140 (Pa.Super.2007), *appeal denied,* 603 Pa. 679, 982 A.2d 509 (2009) ("We shall not develop an argument for [the appellant], nor shall we scour the record to find evidence to support an argument; consequently, we deem this issue waived."). Accordingly, Appellant's first claim would be waived for this reason as well.

Our independent review of the record reveals that the Commonwealth's reference to the statement in closing argument,

even as reproduced in the lengthy quotation presented by Appellant, goes to the credibility of the two witnesses rather than to the substance of the statement. (*See* N.T. Trial, 8/24/09, at 167 ("Consider the credibility of that statement that Clara Stanton stated, why shouldn't you believe that? . . . Doesn't it have the ring of truth to it?"); *see also id.* at 167–70; Appellant's Brief, at 9–11). Appellant's claim has no arguable merit.

Furthermore, trial counsel had an obvious reasonable basis not to seek an additional instruction, which would have necessarily reminded the jury of the underlying statement that Appellant planned to rob the victim. "Under some circumstances, trial counsel may forego objecting to an objectionable remark or seeking a cautionary instruction on a particular point because objections sometimes highlight the issue for the jury, and curative instructions always do." *Koehler, supra* at 146. Appellant's first issue is waived and would not merit relief.

Secondly, Appellant asserts that trial counsel should have objected to the prosecutor's reference in closing argument to Appellant's having been out of work for a year, and that his testimony lacked credibility. (*See* Appellant's Brief, at 3). Appellant argues that trial counsel's failure to object deprived him of a fair trial and due process of law. (*See id.* at 13–15). We disagree.

■ First, again, Appellant fails to develop an argument of ineffectiveness in light of the three-pronged *Pierce* test. (*See id.*). Instead, Appellant baldly claims

---

11. For clarity and clarification, it bears noting that the statement at issue does not mention murder, as alleged by Appellant, only robbery. (*See* N.T. Trial, 8/20/09, at 112).

12. Appellant notes, correctly, that on direct appeal, this Court decided that the challenge to the cautionary instruction was waived for lack of objection at trial. (*See* Appellant's Brief, at 8, 11; *see also Charleston, supra* at 528).

that the prosecutor "engaged in misconduct" when it improperly referred to his being out of work, citing *Commonwealth v. Barkelbaugh*, 526 Pa. 133, 584 A.2d 927 (1990) and *Commonwealth v. Haight*, 514 Pa. 438, 525 A.2d 1199 (1987), and that trial counsel's failure to object constituted denial of due process. (Appellant's Brief, at 14; *see also id.* at 15). Appellant's argument is waived for that reason alone.

■ Furthermore, we note that the prosecutor's two brief references in final argument to Appellant's financial status consist of a total of three sentences in a summation which extends to over thirty pages of the trial transcript. "And we know that the defendant had not had a job for one year." (N.T. Trial, 8/24/09, at 167). "The defendant [ ] doesn't have any money. He's been out of work for a year." (*Id.* at 171; *see also id.* at 164–194).[13]

Appellant fails to develop an argument that, but for the alleged error in not objecting to these three sentences, the outcome of the trial would have been different. Instead, he makes a generic, unsupported claim that he was denied a fair trial and due process of law. (*See* Appellant's Brief, at 15). "To demonstrate prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding." *Spotz, supra* at 312.

■ Appellant acknowledges, but purports to distinguish, *Commonwealth v. Brown*, 911 A.2d 576, 584 (Pa.Super.2006), *appeal denied,* 591 Pa. 722, 920 A.2d 830 (2007). (*See* Appellant's Brief, at 15). The proffered distinction, that *Brown* addressed a direct tie between the financial difficulties and the crime, is unpersuasive. *Brown* held that there is no absolute bar to the admission of all evidence of financial difficulties. *See Brown, supra* at 584 (citing *Commonwealth v. Wax*, 391 Pa.Super. 314, 571 A.2d 386 (1990)). "[W]here evidence of the financial difficulty/debt is specific and evidence of the debt was not intended to stigmatize the appellant on the basis of his economic status, the general prejudice discussed in *Barkelbaugh* is not present." *Id.*

Perhaps most importantly, as in his first claim, Appellant overlooks the obvious strategic motivation of trial counsel to avoid highlighting references to Appellant's plan to rob, or motive to rob, as an explanation for the murder by raising an additional objection, especially after a cautionary instruction had already been given *sua sponte* by the trial court. *See Koehler, supra* at 146.

Finally, on this claim, Appellant also alleges ineffectiveness in trial counsel's purported failure to object to the prosecutor's challenge to his credibility in her final argument. (*See* Appellant's Brief, at 13–14). Appellant argues, without support in the record, that the prosecutor offered her own personal opinion of Appellant's credibility. (*See id.*).

■ Our independent review of the record confirms that the prosecutor questioned Appellant's credibility based on the inconsistencies in his testimony, not on her personal opinion: "Number one. You've got to believe the defendant. You got to believe this story. You got to believe that

---

**13.** The foundation for the references is in the Commonwealth's cross-examination of Appel-

lant. (*See* N.T. Trial, 8/24/09, at 61–62, 65).

testimony. Seriously? That's first and foremost." (N.T. Trial, 8/24/09, at 192).

"In closing arguments, a prosecutor may comment on the evidence and any reasonable inferences arising from the evidence." *Commonwealth v. Arrington*, — Pa. —, 86 A.3d 831, 853 (2014) (citation omitted). Here, the prosecutor did no more. Additionally, her remarks were permissible under well-settled principles which permit the Commonwealth the right of a fair response to the claims of the defense.

> A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor. The prosecutor is also permitted to respond to defense arguments. Finally, in order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made.

*Rolan, supra* at 410 (citation omitted). "Furthermore, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair." *Commonwealth v. Culver*, 51 A.3d 866, 876 (Pa.Super.2012) (citation and internal quotation marks omitted).

Here, in his closing argument, defense counsel had argued that the victim was behaving under the influence of drugs: "[W]hen you're high and under the influence of those drugs, it makes you do **crazy** things and he pulled a gun." [14] (N.T. Trial, 8/24/09, at 160; *see also id.* at 163) (emphasis added). The prosecutor's comments were a fair response to that argument. "[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Keaton*, — Pa. —, 82 A.3d 419, 426 (2013) (citing *Commonwealth v. Pursell*, 555 Pa. 233, 724 A.2d 293, 304 (1999)). Appellant's second claim is waived and would not merit relief.

In his third claim, Appellant asserts ineffectiveness in trial counsel's alleged failure to object to the trial court's instruction, "that the prosecution had proven that he [Appellant] had 'a bad reputation for telling the truth.'" (Appellant's Brief, at 3).[15] Appellant argues that trial counsel failed to object to matters not in evidence. (*See id.* at 16–17). We disagree.

Appellant's third claim is based on an apparent misreading of the record and the applicable law. Both counsel stipulated to the admission of Appellant's criminal record into evidence. (*See* N.T. Trial, 8/24/09, at 145–46). Appellant cites *Commonwealth v. Randall*, 758 A.2d 669, 678 (Pa.Super.2000), *appeal denied*, 564 Pa. 707, 764 A.2d 1067 (2000), for the proposition that "evidence which is not in the record may not be cited by the court or the lawyers to suggest an outcome to the jury." (Appellant's Brief, at 17). The point is irrelevant because counsel stipulated to the admission of Appellant's criminal record into evidence. Appellant offers

---

**14.** Trial counsel's premise was factually incorrect. Dr. Gulino, the Chief Medical Examiner, testified that the only drug in the victim's bloodstream was Xanax, which is, as already noted, a sedative-type drug prescribed to alleviate anxiety. (*See* N.T. Trial, 8/21/09, at 86).

**15.** Appellant inaccurately paraphrases and technically misquotes the instruction at issue. The trial court actually said, in relevant part: "The assistant district attorney introduced evidence **tending to show** that the defendant's reputation for telling the truth is bad." (N.T. Trial, 8/24/09, at 227 (emphasis added); *see also* PCRA Court Opinion, 1/11/13, at 6; Commonwealth's Brief, at 26).

no other authority in support of his claim. Appellant's third claim fails.

■ In his fourth claim, Appellant alleges ineffectiveness in trial counsel's not requesting an instruction on involuntary manslaughter or homicide by misadventure. (*See* Appellant's Brief, at 3). Central to Appellant's argument, he maintains that for our review this Court "**must accept the version of the facts most favorable to the position of the defendant[.]**" (Appellant's Brief, at 18) (emphasis in original). We disagree.

Once again, Appellant falls to develop an argument for his claim in light of the well-settled three pronged *Pierce* test for ineffectiveness analysis. Instead, citing cases involving direct appeals, Appellant merely asserts that he was entitled to an instruction on homicide by misadventure [16] and involuntary manslaughter.[17] (*See* Appellant's Brief, at 19). Accordingly, Appellant's claim is waived. *See Rolan, supra*

at 406. Moreover, it would not merit relief.

■ In the first place, Appellant fails to prove that he was prejudiced by the purported omissions. Specifically, he does not prove that it is likely that if he had received the instructions he now claims, the outcome of his trial would have been different. (*See* Appellant's Brief, at 17–21); *see also Spotz, supra* at 311–12.[18]

■ Crucially, Appellant again misapprehends our standard and scope of review in a collateral appeal. This Court analyzes PCRA appeals "**in the light most favorable to the prevailing party at the PCRA level.**" *Commonwealth v. Rykard,* 55 A.3d 1177, 1183 (Pa.Super.2012), *appeal denied,* 619 Pa. 714, 64 A.3d 631 (2013) (emphasis added); *see also Spotz, supra* at 311 ("The scope of review is limited to the findings of the PCRA court and the evidence of record, **viewed in the light most favorable to the prevailing party at the trial level.**") (emphasis added). Put an-

16. Our Supreme Court has defined homicide by misadventure as follows:
 Homicide by misadventure, which is excusable, is defined as: the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. "Three elements enter into the defense of excusable homicide by misadventure: [1] The act resulting in death must be a lawful one; [2] It must be done with reasonable care and due regard for the lives and persons of others; and [3] the killing must be accidental and not intentional, or without unlawful intent, or without evil design or intention on the part of the slayer.... Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state...."
 *Commonwealth v. Legg,* 551 Pa. 437, 711 A.2d 430, 432 n. 2 (1998) (quoting *Commonwealth v. Hobson,* 484 Pa. 250, 398 A.2d 1364, 1368 (1979)).

17. The offense of involuntary manslaughter is defined by statute as follows:
 A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.
 18 Pa.C.S.A. § 2504(a).

18. To the contrary, in view of Appellant's admission that he fired the fatal shots, the illegal circumstances of the shooting, his initial denial of knowledge of anything about the death, his claim at trial that he didn't even know the victim had been shot, his steadfast claim of self-defense, and the ballistics evidence contradicting his version of the shooting, we conclude that the proposition that an instruction on homicide by misadventure would have likely resulted in a different verdict is remote in the extreme.

other way, this Court reviews appeals from the denial of collateral relief under the actual prejudice standard, not the less stringent harmless error standard. *See Spotz, supra* at 315, 320. Therefore, this Court's review of the PCRA court's order need not and does not accept Appellant's "version of the facts." (Appellant's Brief, at 18) (emphasis omitted).

> Thus, viewing the prejudice question under the appropriate standard, to establish prejudice from trial counsel's failure to object to the challenged portion of the justification charge, Appellee must show there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different. *See Koehler, supra.*

*Spotz, supra* at 320.

 Here, Appellant asserts that if different instructions had been requested, "the outcome of the trial **may well** have been different[.]" (Appellant's Brief, at 20) (emphasis added). Unsupported speculation does not establish reasonable probability.

Moreover, Appellant's citation of direct appeal authority does not present alternate grounds for relief. We are mindful that the following principles would apply in a direct appeal involving a jury instruction:

> Defendants are generally entitled to instructions that they have requested and that are supported by the evidence. *Commonwealth v. Markman,* 591 Pa. 249, 916 A.2d 586, 607 (2007); *Commonwealth v. DeMarco,* 570 Pa. 263, 809 A.2d 256, 261 (2002) ("Where a defendant requests a jury instruction on a defense, the trial court may not refuse to instruct the jury regarding the defense if it is supported by evidence in the record."); *Commonwealth v. Browdie,* 543 Pa. 337, 671 A.2d 668, 673–74 (1996) ("[W]e hold that a trial court shall only instruct on an offense where the

offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict."). We have explained that the reason for this rule is that "instructing the jury on legal principles that cannot rationally be applied to the facts presented at trial may confuse them and place obstacles in the path of a just verdict." *Commonwealth v. Taylor,* 583 Pa. 170, 876 A.2d 916, 925–26 (2005) (quoting *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399, 400 (1980)). A criminal defendant must, therefore, "establish that the trial evidence would 'reasonably support' a verdict based on the desired charge and may not claim entitlement to an instruction that has no basis in the evidence presented during trial." *Id.* (citing *Commonwealth v. Carter,* 502 Pa. 433, 466 A.2d 1328, 1332–33 (1983)).

*Commonwealth v. Hairston,* —— Pa. ——, 84 A.3d 657, 668 (2014).

Here, neither homicide by misadventure nor involuntary manslaughter were at issue in the trial. Aside from his procedurally erroneous supposition that the record must be viewed in the light most favorable to him, Appellant offers no argument or authority that the evidence at trial objectively supported his claim for either of the new instructions he now desires.

Appellant principally cites to three cases: *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378, 381 (1979); *Commonwealth v. Beach,* 438 Pa. 37, 264 A.2d 712 (1970); and *Commonwealth v. Flax,* 331 Pa. 145, 200 A. 632, 637–38 (1938). (*See* Appellant's Brief, at 18). Notably, all three cases are direct appeals from the judgment of sentence which preceded our Legislature's enactment of the PCRA. Therefore, they are inapposite to the claims raised in this collateral appeal.

In any event, Appellant also misreads the import of the cases. In relevant part, *Musi, supra* decided that "since the **testimony did not warrant a charge as to homicide by misadventure,** defense counsel's failure to request such a charge is obviously **not** a basis for finding ineffective assistance of counsel." *Musi, supra* at 381 (citations omitted) (emphases added).

Similarly, Appellant extracts a quotation derived from *Commonwealth v. Mayfield,* 401 Pa.Super. 560, 585 A.2d 1069, 1074 (1991) (*en banc*), out of context, for the proposition that "a claim of accidental shooting and a claim of self-defense are not necessarily inconsistent if the circumstances of the case 'allow that the accidental injury or death occurred within the course of the act of defending himself[.]'" (Appellant's Brief, at 19).[19] In any event the extract quoted is mere *dicta.*

The actual issue in *Mayfield* was not an instruction on involuntary manslaughter. Rather, it was whether the appellant was entitled to an instruction on **self-defense,** an instruction which was indisputably given here. *See Mayfield, supra* at 1070 ("The issue as presented by the Commonwealth for this court's review is whether appellant is entitled to an instruction on self-defense when appellant denied committing the act for which he was convicted.").

Our independent review of the pertinent authority confirms that there is no arguable merit to Appellant's claims on appeal. *See Musi, supra* at 381 (no ineffectiveness where testimony did not warrant charge as to homicide by misadventure); *Commonwealth v. Duffy,* 355 Pa.Super. 145, 512 A.2d 1253, 1260 (1986), *appeal denied,* 514 Pa. 641, 523 A.2d 1130 (1987) (holding act of lunging for loaded gun not one which is done with **reasonable care and due re-** **gard for the lives of others;** appellant not entitled to charge of homicide by misadventure); *see also Commonwealth v. Soltis,* 455 Pa.Super. 218, 687 A.2d 1139, 1141 (1996), *appeal denied,* 548 Pa. 647, 695 A.2d 786 (1997) (holding appellant not entitled to **involuntary manslaughter** charge absent evidence that tended to show he acted recklessly or with gross negligence in causing death) (citing 18 Pa.C.S.A. § 2504(a)). Trial counsel's strategic decision not to pursue competing theories of homicide by misadventure or involuntary manslaughter with requested instructions had a reasonable basis. Appellant fails to prove prejudice.

■ Finally, we note that the fundamental premise of Appellant's fourth claim is flawed.

It is by now axiomatic that the test for evaluating a claim of ineffective assistance of counsel is whether the record supports a conclusion that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interest. In making this assessment we are not to employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, but **whether there was a reasonable basis for the course of action actually selected.**

*Musi, supra* at 380 (citation omitted) (emphasis added).

Where counsel has made a strategic decision after a thorough investigation of law and facts, it is virtually unchallengeable; strategic choices made following a less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation of the investigation. As noted, an evaluation of counsel's performance is highly deferential, and the

---

**19.** The actual quote from *Mayfield* is "actor," not "act of." *Mayfield, supra* at 1074.

reasonableness of counsel's decisions cannot be based upon the distorting effects of hindsight. . . . Furthermore, reasonableness in this context depends, in critical part, upon the information supplied by the defendant. Thus, assuming a reasonable investigation, where there is no notice to counsel of particular mitigating evidence, he cannot be held ineffective for failing to pursue it.

*Rolan, supra* at 406 (citations omitted); *see also Commonwealth v. Hudson,* 455 Pa. 117, 314 A.2d 231, 235 (1974) ("The essence of advocacy is to select in light of the evidence and trial atmosphere what may be conceded and to challenge what counsel's judgment indicates may best advance his client's interests.").

Here, after initial denials, from his first substantive statement to the police, to his testimony at trial, despite numerous inconsistencies, variations and other discrepancies, Appellant maintained that he acted in self-defense. On review, we discern no basis to find trial counsel ineffective, based on the information supplied by Appellant, for pursuing his claim of self-defense and presenting the jury with a consistent theme and strategy of the case. *See Rolan, supra* at 406; *see also Hudson, supra* at 235. Appellant's fourth issue is waived and would not merit relief.

■ Accordingly, all of Appellant's claims are waived, and merit no relief. He has failed to overcome the presumption of effectiveness. The PCRA court properly dismissed his petition without a hearing. Our reasoning differs somewhat from that of the PCRA court. However, "we may affirm the PCRA court's decision on any basis." *Commonwealth v. Williams,* 977

A.2d 1174, 1177 n. 8 (Pa.Super.2009), *appeal denied,* 605 Pa. 700, 990 A.2d 730 (2010).

Order affirmed.

OLSON, J., files a Concurring and Dissenting Opinion.

CONCURRING AND DISSENTING OPINION BY OLSON, J.:

I respectfully concur in part and dissent in part. I concur in the result reached by the learned majority with respect to Appellant's claims that his trial counsel was ineffective for: failing to object to the prosecutor's statement that he had a bad reputation for telling the truth; failing to object to the prosecutor's closing argument;[1] and failing to seek a homicide by misadventure jury instruction. However, I believe that Appellant is entitled to an evidentiary hearing concerning his claims that his trial counsel was ineffective for failing to object to the limiting instruction regarding Clara Stanton's hearsay testimony and in failing to seek a jury instruction on involuntary manslaughter. I therefore respectfully dissent from those portions of the learned majority's disposition of this case.

The majority finds that Appellant has waived his claim that his trial counsel was ineffective for failing to object to the limiting instruction the trial court gave regarding Clara Stanton's hearsay testimony. Majority Opinion, *ante* at 1020–21. The learned majority cites to *Commonwealth v. Spotz,* —— Pa. ——, 84 A.3d 294 (2014), to support its finding of waiver. *See* Majority Opinion, *ante* at 1021. However, *Spotz* did not find any issue waived nor did it

---

1. Although I concur in the result reached by the learned majority as to this claim, I do not join the learned majority's finding of waiver of Appellant's claim that his counsel was ineffective for failing to object to the prosecutor's closing argument. *See* Majority Opinion, *ante* at 1022–23. Instead, I would address the merits of that argument and affirm based on the merits.

discuss waiver of issues in general. *See generally Spotz*, 84 A.3d 294. The learned majority's rationale for a finding of waiver appears to be Appellant's alleged failure to comply with Pennsylvania Rule of Appellate Procedure 2119. As this Court has explained, Pennsylvania Rule of Appellate Procedure 2119 compels a finding of waiver "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review[.]" *Tosi v. Kizis*, 85 A.3d 585, 589 n. 6 (Pa.Super.2014) (citation omitted).

I believe that Appellant has sufficiently developed this issue in his brief to avoid a finding of waiver under Rule 2119. Appellant devoted over 1600 words, filling six and one-half pages, of his argument section to addressing this single issue. *See* Appellant's Brief at 7–13. He cited to the notes of testimony 13 times. Each citation was a pincite to particular pages of the notes of testimony upon which he was relying. Appellant also cited to four published opinions which bind this Court. In addition, he devoted over 400 words of his reply brief to this issue. *See* Appellant's Reply at 2–4. In my view, the discussion Appellant devotes to his issue in his submissions to this Court is more than adequate to assist our review and, thus, satisfies the criteria embodied in Rule 2119.

In order to succeed on a claim of ineffective assistance of counsel, an appellant must prove that "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or [inaction]; and (3) appellant suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error." *Commonwealth v. Fears*, —— Pa. ——, 86 A.3d 795, 804 (2014) (internal alteration and citation

omitted). Appellant adequately addresses all three prongs of ineffectiveness in his brief.

As to the first requirement that Appellant show his claim has arguable merit, Appellant argues that "the [limiting] instruction failed to eliminate the possibility that the jury could consider [Clara Stanton's] hearsay statement for use as substantive evidence of the Appellant's intent to commit a robbery and a murder." Appellant's Brief at 12, *citing Commonwealth v. Palsa*, 521 Pa. 113, 555 A.2d 808 (1989); *Commonwealth v. Toth*, 455 Pa. 154, 314 A.2d 275 (1974). The learned majority distinguishes *Palsa* and *Toth*. *See* Majority Opinion, *ante* at 1021 & n. 10. However, the learned majority's belief that *Palsa* and *Toth* are distinguishable does not mean that Appellant failed to develop, and thereby waived, this issue. The learned majority's interpretation of Rule 2119 would require that an appellant make a winning argument in order for that argument to be considered preserved for appellate review. I do not believe that there is any authority for imposing such a demanding standard on appellants.

Secondly, as to the requirement that Appellant show that his trial counsel did not have a reasonable basis for failing to object to the limiting instruction, Appellant contends that trial counsel could not have had a reasonable basis for failing to object because of the frequency with which the prosecutor used the hearsay statement to prove the truth of the matter asserted. *See* Appellant's Reply at 3. He further argues that trial counsel could have objected at side bar and therefore there was no risk of highlighting the matter. *Id.* Finally, he contends that, because the limiting instruction was already given, any highlighting had already occurred. *Id.* at 3–4.

Thirdly, as to the requirement that Appellant show that he was prejudiced by the

failure of his counsel to object to the limiting instruction, Appellant argues that because his "intent was the key issue for the jury to resolve, he was surely prejudiced." Appellant's Brief at 13. Furthermore, Appellant repeatedly argues that the failure of counsel to object to the limiting instruction was prejudicial because it permitted the prosecutor to use the hearsay statement for the truth of the matter asserted in her closing argument. *See* Appellant's Brief at 8–11. Therefore, Appellant develops arguments relating to each of the three prongs of the test for ineffective assistance of counsel set forth in *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987). As I conclude that Appellant did not waive this issue, I consider the merits of Appellant's argument.

As the majority acknowledges, the Commonwealth attempted to elicit testimony from Nashua Sanders (Sanders) that Appellant had told her he intended to rob William Stanton. Sanders, however, denied that Appellant ever made this statement. To impeach Sanders' denial, the Commonwealth offered the testimony of Clara Stanton who stated that Sanders told her several weeks after William Stanton's death that Appellant had told Sanders that he intended to rob William Stanton one week prior to the incident. This testimony was admitted for the limited purpose of impeaching Sanders' credibility; it could only be considered for that purpose. Appellant argues that the instruction given by the trial court with respect to this testimony was flawed in three ways: (1) the jury instruction should have been given both at the time the evidence was introduced and during final jury instructions; (2) the instruction was inadequate; and (3) the prosecutor misused the evidence during closing arguments.

Appellant first contends that the instruction was flawed because it was only given at the time the evidence was introduced instead of both when the evidence was introduced and during the final jury charge. This argument is without merit. The law in this Commonwealth is that "a limiting instruction may be given either as the evidence is admitted or as part of the general charge." *Commonwealth v. Overby*, 570 Pa. 328, 809 A.2d 295, 315 n. 1 (2002), *quoting Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841, 845 (1977). While the timing of such an instruction is discretionary, our Supreme Court has "emphasize[d] that it is better to give the limiting instruction at the time the evidence is admitted." *Overby*, 809 A.2d at 315 n. 1, *quoting Covil*, 378 A.2d at 845 (ellipsis omitted). Any objection to not reading the instruction twice would have been without merit. Thus, trial counsel was not ineffective for failing to object to the limiting instruction not being read both at the time the evidence was introduced and during final jury instructions. *See Commonwealth v. Keaton*, 82 A.3d 419, 426 (Pa.2013) (citation omitted) ("[C]ounsel will not be considered ineffective for failing to pursue meritless claims.").

Appellant next argues that the instruction which was given was inadequate. This Court previously found Appellant waived his underlying challenge to the adequacy of the limiting instruction on direct appeal because trial counsel failed to timely object to the substantive content of the instruction given by the trial court. *Commonwealth v. Charleston*, 16 A.3d 505, 528 (Pa.Super.2011), *appeal denied*, 612 Pa. 696, 30 A.3d 486 (2011). On collateral review, Appellant contends that trial counsel overlooked the inadequacy of the limiting instruction. In response, the Commonwealth contends that the trial court acted within its discretion in formulating the instruction as it did and that Appellant's trial counsel did not overlook the issue but instead made a conscious and

rational decision not to object to the instruction.

In Appellant's direct appeal, this Court cited the standard instruction to be given in such circumstances.[2] *Charleston,* 16 A.3d at 528, *citing Commonwealth v. Sattazahn,* 563 Pa. 533, 763 A.2d 359, 365 (2000). The standard limiting instruction is:

> You have heard evidence that a witness, [name of witness], made a statement on an earlier occasion that was inconsistent with [his] [her] present testimony. **You may consider this evidence for one purpose only, to help you judge the credibility and weight of the testimony given by the witness at this trial.** You may not regard evidence of an earlier inconsistent statement as proof of the truth of anything said in that statement.

Pa.SSJI (Crim.) 4.08A (emphasis added); *see Sattazahn,* 763 A.2d at 365. Instead of giving that instruction, the trial court gave the following instruction:

> Ladies and Gentlemen, with regard to the testimony you just heard, **I am just going to give you an instruction that that evidence is** *not necessarily* **to be accepted for the truth of the statements made by Ms. Sanders to Ms. Stanton, ok.** It doesn't—they were statements and you will be given additional instructions at the appropriate time. N.T., 8/20/09, at 116 (emphasis added). This instruction was given immediately after Clara Stanton's hearsay testimony. No further instruction was given on the issue.

Appellant argues that the inclusion of the phrase "not necessarily" was an equivocal version of the suggested unequivocal instruction. The Commonwealth contends that the instruction taken as a whole was a correct statement of the law and that a reasonable jury would interpret the instruction to mean that they could not consider the statement for the truth of the matter asserted. The Commonwealth argues the jury would have viewed the instruction in this manner because there was no point giving the instruction if Clara Stanton's testimony could be considered for the truth of the matter asserted. Commonwealth's Brief at 11. The PCRA court stated in a conclusory manner that the instruction was sufficient. PCRA Court Opinion, 1/11/13, at 4–5.

I believe that a reasonable reading of the limiting instruction requires an acknowledgment that the instruction was equivocal. The commonly understood meaning of the phrase "not necessarily" is "not inevitably" or "not certainly." *See, e.g.,* Collins English Dictionary (2003); The American Heritage Dictionary of the English Language, Fourth Edition (2009).

I find instructive the consistent use of the phrase "not necessarily" in the Pennsylvania Suggested Standard Criminal Jury Instructions.[3] For example, Section 4.13A(2) provides:

> The evidence of [name of victim]'s [failure to complain] [delay in making a complaint] does not necessarily make [his] [her] testimony unreliable, but may remove from it the assurance of reliability accompanying the prompt complaint or

---

**2.** I recognize that "[t]he Suggested Standard Jury Instructions themselves are not binding and do not alter the discretion afforded trial judges in crafting jury instructions; rather, as their title suggests, the instructions are guides only." *Commonwealth v. Simpson,* 620 Pa. 60, 66 A.3d 253, 274 n. 24 (2013) (internal quotation marks and citation omitted).

**3.** The learned majority refers to the use of the phrase "not necessarily" as being "colloquial." Majority Opinion, *ante* at 1020–21. However, the Pennsylvania Suggested Standard Criminal Jury Instructions use the

outcry that the victim of a crime such as this would ordinarily be expected to make. Therefore, the [failure to complain] [delay in making a complaint] should be considered in evaluating [his] [her] testimony and in deciding whether the act occurred [at all] [with or without [his] [her] consent].

Pa.SSJI (Crim.) 4.13A(2). In this instruction, the phrase "not necessarily" is employed to inform the jury that it may consider the lack of a prompt complaint when determining if an assault took place but that lack of a prompt complaint is not dispositive.

Similarly, section 4.09(5) provides that:

In deciding which of conflicting testimony to believe, you should not necessarily be swayed by the number of witnesses on either side. You may find that the testimony of a few witnesses, even of just one witness, is more believable than the opposing testimony of a greater number of witnesses. On the other hand, you should also consider the extent to which conflicting testimony is supported by other evidence.

Pa.SSJI (Crim.) 4.09(5). This instruction does not prohibit the jury from considering the number of witnesses that testify to a certain fact when making its findings. Instead, it cautions the jury that such information is not dispositive.

Moreover, section 3.14 provides, in relevant part:

Generally speaking, when a crime has been committed and a person thinks he or she is or may be accused of committing it and he or she flees or conceals himself or herself, such flight or concealment is a circumstance tending to prove the person is conscious of guilt. Such flight or concealment does not necessarily show consciousness of guilt in every case. A person may flee or hide for some other motive and may do so even though innocent. Whether the evidence of flight or concealment in this case should be looked at as tending to prove guilt depends upon the facts and circumstances of this case and especially upon motives that may have prompted the flight or concealment.

Pa.SSJI (Crim.) 3.14. This instruction specifically provides that the jury may consider a person's concealment as consciousness of guilt. The phrase "not necessarily" is used to show that this one factor alone is not dispositive.

Thus, the standard jury instructions that use the phrase "not necessarily" employ it in a manner which supports the interpretation given by Appellant. The standard instructions do not employ the phrase "not necessarily" in a manner consistent with the interpretation given by the Commonwealth and the PCRA court.[4]

---

phrase "not necessarily" in a very specific manner.

4. Furthermore, when courts in this Commonwealth use the phrase "not necessarily," it is used in a manner that does not preclude an inference from being drawn. Instead, courts use the phrase to mean that the inference does not have to be drawn, but that such an inference may be drawn. For example, in *Hill v. Ofalt*, this Court used the phrase "not necessarily" when discussing captions of cases. 85 A.3d 540, 546 n. 5 (Pa.Super.2014). We used the phrase to show that an individual's name appearing in the caption of a praecipe for writ of summons does not conclusive-

ly establish that the individual is a party to the action. *Id.* Likewise, in *Commonwealth v. Johnson,* our Supreme Court used the phrase "not necessarily" when discussing the exclusionary rule. —— Pa. ——, 86 A.3d 182, 185–186 & n. 3 (2014). Our Supreme Court used the phrase to show that whether the exclusionary rule applied to evidence seized under an expired warrant "depend[s] on the circumstances." *Id.* Thus, our Supreme Court used the term "not necessarily" to indicate that there was no bright line rule regarding the exclusionary rule with respect to expired warrants. *Id.* Finally, in *Tri–County Landfill, Inc. v. Pine Tp. Zoning Hearing Bd.,* the Commonwealth Court used the phrase "not necessari-

I reject the Commonwealth's argument that the jury would have treated Clara Stanton's testimony differently because it was the only testimony that was followed by a limiting instruction. As the PCRA court rightfully noted in its opinion, jurors are presumed to follow instructions. PCRA Court Opinion, 1/11/13, at 5 n.3, *citing Commonwealth v. Gease,* 548 Pa. 165, 696 A.2d 130 (1997); *see Commonwealth v. Arrington,* — Pa. ——, 86 A.3d 831, 845 (2014) (citation omitted). If the jury followed the trial court's instruction with respect to Clara Stanton's testimony, it could have considered the hearsay portion of her testimony as proof of the truth of the matter asserted since the trial court's instruction did not foreclose this approach. Such a deliberation process would defeat the fundamental purpose of the limiting instruction. Thus, the jury instruction in the instant case was fundamentally erroneous and would likely have led to confusion by the jurors. Accordingly, I conclude that Appellant has satisfied the first prong of an ineffectiveness claim as his claim has arguable merit.

In considering the second prong of ineffectiveness claim, *i.e.,* whether trial counsel had a reasonable basis for not objecting to the instruction, I believe that such a determination cannot be made without an evidentiary hearing. The PCRA court dismissed Appellant's petition without an evidentiary hearing. Our Supreme Court has explained that "the [PCRA] court is not to glean, surmise, or speculate with regard to the strategy of counsel except in those **rare** instances where his strategy is clear and obvious from the record under review." *Commonwealth v. McGill,* 574 Pa. 574, 832 A.2d 1014, 1023 (2003) (emphasis added); *Commonwealth v. Williams,* 732

A.2d 1167, 1189–1190 (1999): *see Commonwealth v. Green,* 603 Pa. 66, 981 A.2d 1283 (2009) *(per curiam ); cf. Commonwealth v. Spotz,* 582 Pa. 207, 870 A.2d 822, 836 (2005) ("The record ... contains no evidentiary hearing involving testimony from trial counsel, or relevant factual findings at the trial court level. But, that is not to say that, if given an opportunity to develop his collateral claim, appellee will be unable to sustain it.").

This is not one of those rare instances in which counsel's strategy is clear and obvious from the certified record. The learned majority may be correct that Appellant's trial counsel made a calculated decision not to request a revised instruction in an attempt not to highlight the testimony. Majority Opinion, *ante* at 1022–23. However, I believe that we cannot assume that trial counsel failed to object for that reason without supporting evidence. As such, I conclude that the PCRA court erred by determining, as a matter of law, that Appellant failed to satisfy the second prong of ineffectiveness without an evidentiary hearing.

Turning to the third prong regarding whether Appellant has shown the requisite prejudice necessary for relief on an ineffective assistance of counsel claim, "to establish the prejudice prong, the petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Commonwealth v. Elliott,* — Pa. ——, 80 A.3d 415, 427 (2013) (citation omitted). In its Rule 1925(a) opinion, the PCRA court stated in a conclusory fashion that Appellant had not proven he was prejudiced by his counsel's failure to object to the limiting instruction. PCRA Court Opinion, 1/11/13,

ly" to show that not all of the examples listed in the zoning code were affixed to the ground.

83 A.3d 488, 515 (Pa.Cmwlth.2014).

at 5. However, I believe that the PCRA court's finding is not supported by the certified record.[5]

There was no other testimony presented at trial regarding Appellant's alleged statement that he was going to rob William Stanton. The only evidence regarding this alleged statement by Appellant was the hearsay testimony of Clara Stanton. Although the evidence was admissible for the purpose of impeaching Sanders, as I have noted, the trial court's instruction allowed the jury, impermissibly, to consider the testimony for the truth of the matter asserted.

Appellant's credibility was central to the case at bar. As such, I am reluctant to accept, at this stage, any argument that would permit the jury to consider the challenged hearsay testimony for the truth of the matter asserted on grounds that such testimony did not, or could not, prejudice Appellant. Allowing the jury to consider Clara Stanton's testimony for the truth of the matter asserted may have led the jury to conclude that Appellant's testimony regarding entering the house to conduct a drug deal was false. However, the testimony should have only been admitted to impeach Sanders' credibility, not Appellant's. Thus, I believe that the record is not developed to the point where I can conclude as a matter of law that Appellant was not prejudiced by allowing the jury to consider this hearsay statement for the truth of the matter asserted. *Id.* at 167–170. This Court previously found that Appellant waived any objection to the prosecutor's closing argument with respect to this issue on direct appeal. *Charleston,* 16 A.3d at 528 n. 5. However, these state-

ments during the prosecutor's closing argument may be considered when determining whether Appellant was prejudiced by the equivocal limiting instruction given by the trial court.

Furthermore, the prosecutor argued during her closing that, "And [ ] Sanders told [Clara] Stanton that she had spoken with [Appellant] a week before the murder. And that he had told her that [ ]he was going to rob William Stanton. And [ ] Sanders said, ['[you know, why are you going to do that? You know, he's your friend.[']" N.T., 8/24/09, at 167. The prosecutor then spent the next four pages of her closing addressing this statement. *Id.*

I emphasize that I do not conclude that Appellant was prejudiced, rather I conclude that Appellant is entitled to an evidentiary hearing on his claim that his counsel was ineffective for failing to object to the limiting instruction. *See Commonwealth v. Green,* 957 A.2d 1238, 1243 (Pa.Super.2008) (Colville, J. concurring in part and dissenting in part) (this Court should not make findings on prejudice prior to a remand for an evidentiary hearing on whether trial counsel's action was a reasonable trial strategy).[6] Accordingly, I believe it is appropriate to remand this matter to the PCRA court to hold an evidentiary hearing and permit Appellant to present evidence as to whether his trial counsel had a reasonable basis for his decision not to object to the limiting instruction and, if not, whether he was prejudiced by his counsel's failure to object to the limiting instruction. The PCRA court should then make findings of fact with respect to the reasonableness of trial coun-

**5.** I note again that this Court previously found that Appellant had waived his claim that the limiting instruction was flawed on direct appeal because his trial counsel failed to object. *Charleston,* 16 A.3d at 528.

**6.** Our Supreme Court vacated this Court's holding in *Green* and adopted by reference Judge Colville's reasoning. *Green,* 981 A.2d at 1283.

sel's decision not to object to the limiting instruction and the prejudice, if any, suffered by Appellant as a result of counsel's failure to object.

As to Appellant's claim that his trial counsel was ineffective for failing to seek a jury instruction on involuntary manslaughter, the learned majority concludes that Appellant also waived this issue by failing to develop it properly on appeal. Majority Opinion, *ante* at 1024–25. In finding waiver, the learned majority relies upon *Commonwealth v. Rolan*, 964 A.2d 398 (Pa.Super.2008). In *Rolan*, this Court found that the appellant waived his claim of prosecutorial misconduct for failure to properly develop his argument on appeal. *Rolan*, 964 A.2d at 411. This finding of waiver was made because the appellant merely alleged acts of prosecutorial misconduct in a "laundry lists" format. *Id.* He did not develop any argument regarding these laundry lists. *Id.* Thus, *Rolan* is distinguishable from the case at bar.

In his brief, Appellant allotted over 900 words, approximately four pages, to the portion of his argument addressing counsel's alleged dereliction in failing to seek a jury instruction on involuntary manslaughter and/or homicide by misadventure. *See* Appellant's Brief at 17–21. He cited to the notes of testimony six times. He cited approximately ten cases from this Commonwealth addressing relevant legal issues. He discussed how these cases were applicable to the case at bar and why he was entitled to relief. Similar to my previous assessment, I believe that Appellant's development of this claim comports with the requirements of Rule 2119. There is a vast difference between the failure to make a meritorious claim and the failure to develop any claim whatsoever. In the first instance, this Court may reject the claim after passing upon its merits. In the second instance, we may deny relief without

addressing the appellant's substantive contentions. For the reasons that follow, I believe that in the case *sub judice*, Appellant's submissions are sufficient to overcome the latter hurdle and that this Court may properly reach the substantive contentions he raises on appeal. As such, I turn to the merits of Appellant's claim that his counsel was ineffective for failing to seek a jury instruction on involuntary manslaughter.

As to the first prong of ineffectiveness, Appellant cites to several cases regarding a defendant's right to a jury instruction on involuntary manslaughter. Appellant's Brief at 18–19. He argues that his testimony alone established sufficient facts to warrant such an instruction. *See id.* at 19. He cites to specific portions of the notes of testimony to support this assertion. *Id.* As to the second prong of ineffectiveness, Appellant argues that trial counsel could not have had a reasonable basis for not seeking the involuntary manslaughter instruction. *Id.* at 20. Finally, as to the third prong of ineffectiveness, Appellant argues that the jury may have found him guilty of involuntary manslaughter instead of first-degree murder if the instruction were given. *Id.* at 20–21.

I begin my discussion of the merits of this issue with this Court's standard and scope of review as much of my disagreement with the learned majority arises from its application of those principles. I agree that in the PCRA context we review a PCRA court's findings of fact to determine if they are supported by the record and a PCRA court's legal conclusions *de novo*. *See* Majority Opinion, *ante* at 1018–19, *quoting Spotz*, 84 A.3d at 311. However, I believe that the learned majority misapprehends *Spotz's* statement that, "The scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to

the prevailing party at the trial level." *Spotz*, 84 A.3d at 311. The majority interprets that sentence to mean that, in all instances, this Court must view the trial evidence in the light most favorable to the Commonwealth. *See* Majority Opinion, *ante* at 1025–26. However, the majority quotes a portion of *Spotz* that only discusses viewing the evidence in the light most favorable to the Commonwealth with respect to the prejudice prong of ineffectiveness. *See* Majority Opinion, *ante* at 1026, *quoting Spotz*, 84 A.3d at 320 ("Thus, viewing the prejudice question under the appropriate standard").

The learned majority does not cite to any authority for the proposition that when evaluating the arguable merit prong of an ineffectiveness claim this Court must always view the evidence in the light most favorable to the Commonwealth. I believe that this is because our law is clear that in deciding whether a claim has arguable merit this Court applies the same standard of review on collateral review as it does on direct appeal. *See Commonwealth v. Steele*, 599 Pa. 341, 961 A.2d 786, 797 n. 10 (2008) (citation omitted) ("Although the merits analysis encompasses the argument that would be made if this were a direct appeal, the petitioner must nevertheless set forth herein the two other prongs of ineffectiveness, because Sixth Amendment ineffectiveness claims are distinct from merits review.").

This is most evident in *Commonwealth v. Carter*, 861 A.2d 957 (Pa.Super.2004), *reversed on other grounds*, 593 Pa. 562, 932 A.2d 1261 (2007). In *Carter*, the appellant claimed that his appellate counsel was ineffective for failing to challenge an evidentiary ruling made by the trial court. *Id.* at 961. In considering whether his underlying claim had arguable merit, we noted that, **"The underlying standard of review** with regard to a trial court's evi-

dentiary rulings is as follows . . ." *Id.* (emphasis added). We then went on to examine whether the appellant's argument had arguable merit under this underlying standard of review. *Id.* Although our Supreme Court reversed on other grounds, it also reviewed the claim based upon the underlying standard of review. *Carter*, 932 A.2d at 1264 (internal quotation marks, alteration, and citation omitted) ("[A]s the PCRA court's determination was based upon its review of the trial court's evidentiary ruling, we keep in mind that the admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion.").

Thus, if on direct appeal this Court must view the evidence in the light most favorable to the Commonwealth, this Court will similarly do so on collateral review. However, if on direct appeal this Court views the evidence in the light most favorable to the defendant, this Court does likewise on collateral review. Appellant contends his counsel was ineffective for failing to seek an involuntary manslaughter instruction. This Court views the evidence in the light most favorable to the defendant when determining if he was entitled to an involuntary manslaughter jury instruction on direct appeal. *Commonwealth v. Soltis*, 455 Pa.Super. 218, 687 A.2d 1139, 1141 (1996), *appeal denied,* 548 Pa. 647, 695 A.2d 786 (1997) ("In determining whether the evidence would support a[n involuntary] manslaughter charge, [this Court] must view the evidence in the light most favorable to the [appellant]."). Thus, this Court must do likewise on collateral review.

Having outlined what I believe is the proper scope and standard of review, I turn to whether there is arguable merit to Appellant's claim that he was entitled to a jury instruction on involuntary manslaughter. "A person is guilty of involuntary

manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). "An instruction on involuntary manslaughter is not required unless it has been made an issue in the case and the facts would support such a verdict." *Commonwealth v. Fletcher*, 604 Pa. 493, 986 A.2d 759, 791 (2009), *citing Commonwealth v. White*, 490 Pa. 179, 415 A.2d 399, 402 (1980).

"[T]here is no longer a question under the law of this Commonwealth that if the evidence in a homicide trial supports a verdict of involuntary manslaughter, the offense is an issue in the case, and a charge on involuntary manslaughter must be given if requested." *Commonwealth v. McCloskey*, 441 Pa.Super. 116, 656 A.2d 1369, 1372 (1995), *appeal denied*, 542 Pa. 662, 668 A.2d 1126 (1995) (internal quotation marks and citations omitted); *Commonwealth v. Draxinger*, 345 Pa.Super. 554, 498 A.2d 963, 965 (1985) ("If any version of the evidence in a homicide trial, from whatever source, supports a verdict of involuntary manslaughter, then the offense has been made an issue in the case, and a charge on involuntary manslaughter must be given if requested."); *see also Commonwealth v. Garang*, 9 A.3d 237, 245 n. 9 (Pa.Super.2010) (internal quotation marks and citations omitted) ("The relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case.").

Although the law regarding when an involuntary manslaughter charge should be given is well-settled, courts have often struggled with the application of that law when self-defense is also at issue. Thus, a brief review of the history of a defendant's right to an involuntary manslaughter instruction when self-defense has also been claimed is necessary so as to understand the source of this confusion.[7]

Prior to our Supreme Court's 1980 decision in *White*, "[i]n every prosecution for criminal homicide ... a defendant [was] entitled, upon request, to a jury instruction on involuntary manslaughter." *Commonwealth v. Smith*, 474 Pa. 559, 379 A.2d 96, 97 (1977), *abrogated*, *White*, 415 A.2d at 402.[8] Our Supreme Court first considered changing the mere request rule in *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978). In *Terrell*, the defendant entered into an argument with the victim over a poker game at a jitney stop. *Id.* at 1119–1120 (Pomeroy, J. opinion announcing the judgment of the Court). The defendant testified that the victim pulled a firearm during the argument and that he took the firearm from the victim and shot the victim. *Id.* at 1120. The defendant then dropped the firearm and fled the scene. *Id.* Terrell argued that he did not intend to do serious bodily injury to the victim. *Id.* He requested an involuntary manslaughter charge but the trial court denied that request. *Id.* at 1119.

On appeal, our Supreme Court observed that the defendant's "theory of the case was shaken by [defendant's] testimony on cross-examination, and particularly by his

---

7. In many of the cases discussed below regarding whether a jury instruction on involuntary manslaughter was required, the Commonwealth presented evidence that contradicted that presented by the defendant. However, I must focus on facts that the courts considered when deciding if the jury instruction on involuntary manslaughter was appropriate, *i.e.*, the facts most favorable to the defendant.

8. Hereinafter, I refer to the rule discussed in *Smith* as the "mere request rule" and the rule announced in *White* as the "issue-in-the-case rule."

admissions that he knew that the gun was pointed at [the victim]. But the testimony contained conflicting versions, as the portions of the testimony.... and the resolution of these versions was for the jury." *Id.* at 1120–1121. Thus, our Supreme Court ultimately determined that Terrell was entitled to a jury instruction on involuntary manslaughter. *Id.*

Although *Terrell* has never been overruled, its continued vitality has subsequently called into question for two reasons. *See Commonwealth v. Long,* 397 Pa.Super. 140, 579 A.2d 970, 973 (1990), *appeal denied,* 527 Pa. 615, 590 A.2d 756 (1991). First, our Supreme Court was sharply splintered in *Terrell.*[9] Second, three of the votes in *Terrell* were based upon the mere request rule.[10]

In 1980, our Supreme Court decided *White,* and recognized that:

> Unfortunately for the bar, both prosecution and defense, and the trial bench, the problem exemplified by [*White*] (whether a jury instruction on involuntary manslaughter need be given in all homicide prosecutions) continue[d] to be subject to differing views, among members of [our Supreme] Court.... [S]everal cases [came] before [our Supreme] Court raising the present issue, although frequently with crucial factual distinctions, receiving only majority support as to result, not as to rationale.

*White,* 415 A.2d at 400. Thus, our Supreme Court first considered whether the mere request rule or the issue-in-the-case rule should be the law of this Commonwealth. Relying upon the general rule that trial courts should not charge the jury on "legal principles which have no application to the facts presented at trial," *White,* 415 A.2d at 400, our Supreme Court abandoned the mere request rule and adopted the issue-in-the-case rule. *Id.* at 400–402.

Applying the issue-in-the-case rule, our Supreme Court in *White* concluded that the defendant was not entitled to an involuntary manslaughter instruction. Viewed in the light most favorable to the defendant, the evidence in *White* showed that the defendant and his co-conspirators robbed a store. *Id.* at 402. While searching the store's manager, the defendant's co-conspirator pressed a firearm against the victim's head at which point the firearm accidentally discharged, killing the victim. *Id.* Our Supreme Court determined that the defendant was not entitled to an involuntary manslaughter instruction since, whether the killing was accidental or intentional, the defendant was guilty of second-degree murder, not involuntary manslaughter. *Id.* (citations omitted).

After the spate of decisions in which our Supreme Court overturned *Smith* and adopted the issue-in-the-case rule, this Court in *McCloskey* considered whether a defendant was entitled to an involuntary manslaughter instruction where self-defense was also placed at issue. In *McCloskey,* the victim broke into the defendant's apartment and began a physical altercation over a parking space. *McCloskey,* 656 A.2d at 1374. The victim realized that the defendant was armed and thus retreated out of the apartment and up a flight of stairs. *Id.* While on the flight of stairs, the victim shouted back "I'll show you a [f

---

**9.** Although all six justices agreed that the defendant was entitled to an instruction on involuntary manslaughter, four opinions were issued. None of the four opinions garnered the votes of more than two justices.

**10.** In 2009, our Supreme Court confronted the argument that *Terrell* no longer represented the law of Pennsylvania. However, our Supreme Court declined to find that *Terrell* is no longer good law and instead distinguished *Terrell. See Fletcher,* 986 A.2d at 790–791 n. 44.

_ _ king] arsenal." *Id.* At that time, the defendant fired and killed the unarmed victim. *Id.* The defendant was charged with first-degree murder. He claimed self-defense, and the jury was instructed on self-defense. *Id.* at 1373 n. 3.

On appeal, we held that even though the jury was given a self-defense instruction, a jury instruction on involuntary manslaughter was proper, despite objection by the Commonwealth. *Id.* at 1375. We noted "that a claim of accidental shooting and self-defense are not necessarily inconsistent when the circumstances of the case allow that the accidental injury or death occurred within the course of the actor defending himself." *Id.* at 1376 n. 5 (internal quotation marks and citations omitted); *see Commonwealth v. Buksa,* 440 Pa.Super. 305, 655 A.2d 576, 586 (1995), *appeal denied,* 544 Pa. 642, 664 A.2d 972 (1995); *Commonwealth v. McFadden,* 402 Pa.Super. 517, 587 A.2d 740, 742 (1991); *see also Commonwealth v. Mayfield,* 401 Pa.Super. 560, 585 A.2d 1069, 1074 (1991) (*en banc* ).

Our Supreme Court most recently decided *Fletcher.* In that case, the defendant testified that the victim had introduced the firearm into an argument. *Fletcher,* 986 A.2d at 791. The defendant testified that after the victim showed the firearm, he "rushed in and we struggled. I got my hand on the gun and I fired it two times toward his leg." *Id.* (citation omitted).

Our Supreme Court found that the defendant was not entitled to an involuntary manslaughter instruction in those circumstances because "[a]ccording to [the defendant's] own version of the incident, he shot the victim intentionally. Thus, it is clear that the offense of involuntary manslaughter had not been made an issue in the case and the evidence would not have reason-

ably supported such a verdict." *Fletcher,* 986 A.2d at 791.

With this history in mind, I believe a defendant is entitled to a jury instruction on involuntary manslaughter whenever the evidence can support a finding that a fatal gunshot was inflicted because of reckless or grossly negligent conduct even if that fatal wound is inflicted during the course of a defensive struggle for a firearm. This conclusion is compelled by our Supreme Court's and this Court's prior decisions regarding when an involuntary manslaughter instruction is warranted, and prior appellate decisions in involuntary manslaughter cases.

The cases relied upon by the Commonwealth do not change my conclusion as these cases are distinguishable from the case at bar. In *Commonwealth v. Thomas,* the defendant was hit from behind by one of the victims. 482 Pa. 312, 393 A.2d 1122, 1125 (1978) (Pomeroy J. in support of affirmance).[11] Another victim then pursued the defendant. *Id.* Fearing for his life, the defendant fired at the pursuing victim from a distance of five to six feet away. *Id.* The defendant fired his weapon a second time after being struck by a knife-wielding victim who originally hit him from behind. *Id.* In all, three victims were struck by the defendant's shots, two of them later died. *Id.*

Justice Pomeroy, with whom Chief Justice Eagan joined, believed that this was not sufficient to warrant an involuntary manslaughter jury instruction. He noted that the defendant advocated a theory of self-defense, arguing that he shot the victims because they were advancing with knives and that, if believed, this testimony would constitute a complete defense to the charges. *Id.* at 1126. Justice Pomeroy distinguished *Thomas* from other cases,

11. *Thomas* is not binding on this Court as our Supreme Court was equally divided. *See Vin-*

*cent v. Fuller Co.,* 532 Pa. 547, 616 A.2d 969, 971 (1992).

stating that, "[t]o shoot another in the chest from a distance of five to six feet does not, without more, indicates that the risk to human life was merely substantial, or that [defendant] was unaware of the natural and practically certain consequences of his act." *Id.*

The three justices in *Thomas* who believed an involuntary manslaughter instruction should be given all relied upon the mere request rule. *Id.* at 1130–1131 (Roberts, J. in support of reversal joined by O'Brien, J.); *id.* at 1131 (Manderino, J. in support of reversal). Thus, it is fair to characterize *Thomas* as a case in which an involuntary manslaughter instruction would not be warranted under the issue-in-the-case rule.[12]

The Commonwealth also cites *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483, 484 (1978), in support of its position. In *Jarvis*, the defendant and the victim got into an argument over a woman. *Id.* at 484. The victim was in the phone booth talking to the woman at the center of the dispute, and the defendant overheard the victim say that he intended to blow the defendant's brains out. *Id.* The defendant thought that the victim was reaching for a firearm, and thus the defendant fired three shots killing the victim. *Id.* Our Supreme Court ruled that the trial court did not err in refusing to give the jury an instruction on involuntary manslaughter because "the facts [did] not support an involuntary man-

slaughter charge **and** appellant claimed to have shot the victim in self-defense." *Id.* at 485 (emphasis added). Our Supreme Court did not find that self-defense and involuntary manslaughter instructions are mutually exclusive. Instead, it merely used a conjunction (highlighted above) to combine two sentences and concluded that the defendant was not entitled to an involuntary manslaughter instruction because the defendant purposefully pulled the trigger and fired at the victim. *Id.*

Lastly, the Commonwealth relies on *Commonwealth v. Walker*, 491 Pa. 351, 421 A.2d 172 (1980). In *Walker*, two individuals were stabbed and beaten by members of a violent street gang. *Id.* at 173. The defendant, a gang member accused of beating and stabbing the victim, claimed that "he went to the scene of the crimes anticipating only a 'fair' fistfight, and fled as soon as his fellow gang members drew their knives." *Id.* Our Supreme Court held that "if [defendant's] version of the incidents was accepted by the jury, he should have been acquitted of murder, not found guilty of involuntary manslaughter, and the trial court properly refused his request for a jury instruction on that offense." *Id.* at 173–174. Our Supreme Court never addressed if involuntary manslaughter and self-defense were incompatible theories as the defendant's theory of the case was that he was not even present when the murder occurred.

12. *Thomas* is an important decision because the three justices that held the evidence was sufficient to warrant a jury instruction on involuntary manslaughter in *Terrell* all found that the facts in *Thomas* did not warrant such an instruction. *See Thomas*, 393 A.2d at 1126 (Pomeroy, J. in support of affirmance with whom Eagan, C.J. joined); *id.* at 1130 (Nix, J. in support of affirmance) ("Unlike its companion case [*Terrell*] in which the disputed fact was whether the killing was reckless, there is no similar disputed fact here; therefore, I do not believe that the instruction on

involuntary manslaughter is necessitated under the facts of this case."). *Thomas* is also important because, in his opinion, Justice Pomeroy made clear that in certain circumstances a defendant could pursue both a self-defense and involuntary manslaughter theory of the case. He concluded, however, that *Thomas* was not such a case because the defendant had shot the victim in the chest from five to six feet away. *Thomas*, 393 A.2d at 1126–1127 (Pomeroy, J. opinion announcing the judgment of the Court).

In *Fletcher, Walker, Jarvis,* and *Thomas,* the evidence, viewed in the light most favorable to the defendants, showed that the defendants all willfully targeted their victims and intentionally deployed their weapons under the guise of self-defense. Thus, our Supreme Court held that the defendants in those cases were not entitled to jury instructions regarding involuntary manslaughter. *Fletcher,* 986 A.2d at 791; *Walker,* 421 A.2d at 173–174; *Jarvis,* 394 A.2d at 484–485; *Thomas,* 393 A.2d at 1126 (Pomeroy J. in support of affirmance). These factual circumstances are markedly different from the case at bar in which Appellant asserts he did not purposefully shoot William Stanton.

According to Appellant, William Stanton and Appellant entered into the house at 2428 North 25th Street in order to complete a drug transaction. William Stanton and Appellant had a disagreement and William Stanton introduced a firearm into the dispute. The two struggled over the firearm and the firearm discharged three times, striking William Stanton and ultimately killing him. *See* N.T., 8/24/09, at 37–43.

Under Appellant's theory of what occurred, he did not intend to kill or do serious bodily injury to William Stanton nor did he aim the firearm at William Stanton. Furthermore, even assuming *arguendo* that *Fletcher* has imposed a higher burden on defendants seeking an involuntary manslaughter jury instruction,[13] Appellant meets that burden. According to Appellant, he did not intentionally fire the weapon. Instead, he asserts that, while acting in self-defense, the firearm discharged accidentally while he was struggling with William Stanton.

Our Supreme Court has found that such evidence can support a finding of involuntary manslaughter. For example, in *Commonwealth v. Moore,* the defendant argued that "the killing of her husband was accidental and involuntary, resulting from a struggle over the gun in her pocketbook." 463 Pa. 317, 344 A.2d 850, 852 (1975) (footnote omitted). Our Supreme Court held that "[defendant's] version, if believed by the jury, would have supported a verdict of involuntary manslaughter." *Id.* at 853 (footnote omitted); *see also Commonwealth v. Garcia,* 474 Pa. 449, 378 A.2d 1199, 1210 n. 2 (1977) (Pomeroy J. concurring) (internal citations omitted) ("[Defendant]'s testimony was essentially that his gun had accidentally discharged while he and the victim were engaged in a struggle. Similar evidence [ ] has been held sufficient to justify a verdict of guilty of involuntary manslaughter."). Thus, if the jury in the case at bar could find that Appellant's version of events was accurate, he was entitled to a jury instruction on involuntary manslaughter.

The Commonwealth argues, however, that the evidence could not support a finding that Appellant's version of events was correct, essentially claiming that incontrovertible evidence rendered Appellant ineligible for a jury instruction on involuntary manslaughter. Our Supreme Court has held "that testimony in conflict with the incontrovertible physical facts and contrary to human experience and the laws of nature must be rejected[.]" *Commonwealth v. Widmer,* 560 Pa. 308, 744 A.2d 745, 752 (2000) (internal quotation marks

---

13. In *Fletcher,* our Supreme Court held that "[a]ccording to [the defendant's] own version of the incident, he shot the victim intentionally. Thus, it is clear that the offense of involuntary manslaughter had not been made an issue in the case and the evidence would not have reasonably supported such a verdict." *Fletcher,* 986 A.2d at 791. This language could arguably be read to no longer require an involuntary manslaughter instruction when the defendant intentionally shoots the victim. However, I need not reach that issue.

omitted), *quoting Commonwealth v. Santana*, 460 Pa. 482, 333 A.2d 876, 878 (1975); *see Commonwealth v. Myers*, 722 A.2d 1074, 1076 (Pa.Super.1998), *appeal denied*, 559 Pa. 702, 740 A.2d 231 (1999) (applying the incontrovertible physical evidence rule to whether a defendant was entitled to a homicide by misadventure charge).

There are portions of Appellant's testimony that must be disregarded as being against incontrovertible physical evidence. For example, Appellant testified that, on the day in question, William Stanton was high on marijuana. N.T., 8/24/09, at 58–59. However, the medical examiner testified that there was no marijuana in William Stanton's system. N.T., 8/21/09, at 86. Yet, whether William Stanton was only under the influence of Xanax or both marijuana and Xanax is immaterial as to the issue of involuntary manslaughter.

In that respect, the evidence cited by the Commonwealth does not foreclose the possibility of Appellant's story being true. First, the Commonwealth argues that Appellant's story cannot be accurate as the evidence contradicts his statement that the gun discharged during the struggle. However, the Commonwealth's expert testified that a .45 caliber firearm can have a trigger pull as light as three pounds. N.T., 8/21/09, at 130. He also testified that it is possible for a gun to discharge accidentally after bumping into something if there is a safety defect in the firearm. *Id.* at 131. He was not able to say with certainty what the trigger pull of the weapon was or if the weapon had a safety defect because the weapon was never recovered. He also testified that, if someone's hand is on the slide, then it is **unlikely** that a firearm would be able to fire three times because it would probably jam. *Id.* at 132. He did **not** testify that it was impossible for the firearm to fire three times with a hand on the slide.

The distance from which the shots were fired could also support Appellant's version of events. The medical examiner testified that one shot was fired from less than eight inches and the other two were fired from less than three feet. N.T., 8/21/09, at 77–78. Three feet is a short distance, and two people struggling over a gun could cause the firearm to emerge between eight inches and three feet from the victim when the firearm discharged. Thus, I conclude that there was no incontrovertible physical evidence that prevented the jury from crediting Appellant's version of events, *i.e.*, a struggle occurring over the firearm that resulted in William Stanton's death. Accordingly, I conclude that Appellant's underlying claim that he was entitled to a jury instruction on involuntary manslaughter has arguable merit.

As to the second prong of ineffectiveness, the PCRA court's reasoning is flawed with respect to its finding that counsel was justified in pursuing a self-defense theory instead of an involuntary manslaughter theory. The PCRA court's opinion makes it appear that Appellant was required to choose either the self-defense theory or the involuntary manslaughter theory. PCRA Court Opinion, 1/11/13, at 7–8. The Commonwealth makes this same argument in its brief. As discussed above, this Court has repeatedly rejected this argument. *McCloskey*, 656 A.2d at 1376 n. 5; *Buksa*, 655 A.2d at 586; *McFadden*, 587 A.2d at 742; *see also Mayfield*, 585 A.2d at 1074. The additional case cited by the Commonwealth does not even mention involuntary manslaughter. *See Commonwealth v. Johnston*, 438 Pa. 485, 263 A.2d 376 (1970). Instead, it merely held that self-defense is an absolute defense. *Id.* at 379.

The learned majority concludes that Appellant's counsel had a reasonable basis for not seeking an involuntary manslaughter

instruction. *See* Majority Opinion, *ante* at 1027–28. The learned majority may be correct that Appellant's trial counsel decided that he preferred to pursue a self-defense theory of the case and force the jury to choose between convicting Appellant of murder and finding him not guilty. However, defense counsel may have also been mistaken in his understanding of the law and believed that Appellant was not entitled to a jury instruction on involuntary manslaughter for the same reason outlined in the PCRA court's opinion. The learned majority does not attempt to explain how this is one of those rare cases in which this Court should make a determination regarding the second prong of ineffectiveness without an evidentiary hearing. Again, there is no evidence of record to support a finding that trial counsel made such a strategic decision. *See McGill,* 832 A.2d at 1023; *Williams,* 732 A.2d at 1189–1190; *Green,* 981 A.2d at 1283; *cf. Spotz,* 870 A.2d at 836. As such, I believe that this Court should not determine as a matter of law that Appellant has failed to prove the second prong of ineffectiveness.

I next consider whether Appellant was prejudiced by his trial counsel's decision to not seek an involuntary manslaughter instruction. All of the previous cases in this area were on direct appeal and not collateral review. However, in each of those cases when an involuntary manslaughter instruction was warranted and was not given, courts determined that the error was not harmless and thus a new trial was required. *Terrell,* 393 A.2d at 1122 (Pomeroy J. opinion announcing the judgment of the Court); *McCloskey,* 656 A.2d at 1378.

A finding on direct appeal that a particular type of error requires a new trial does not compel a finding of prejudice on collateral review. *See Commonwealth v. Reaves,* 592 Pa. 134, 923 A.2d 1119, 1130

(2007). This is because on direct appeal the Commonwealth is required to prove that an error was harmless beyond a reasonable doubt. *See Commonwealth v. Patterson,* —— Pa. ——, 91 A.3d 55, 73 (2014) (citation omitted). On collateral review, however, the petitioner has the burden to prove that an error caused actual prejudice, *i.e.,* but for the error there is a reasonable probability that the outcome would have been different. *See Commonwealth v. Wantz,* 84 A.3d 324, 331 (Pa.Super.2014) (citations omitted).

The learned majority focuses on a portion of Appellant's brief in which he states that "the outcome of the trial **may well** have been different" if the jury were charged on involuntary manslaughter. Majority Opinion, *ante* at 1026 (emphasis in original), *quoting* Appellant's Brief at 20. Although Appellant does not use the exact phrase "reasonable probability," the phrase "may well have" conveys the same sense of error. Appellant is not arguing that the Commonwealth bears the burden of proving harmless error, like on direct appeal. Instead, he recognizes that he carries the burden of proof to show that there is a reasonable probability the outcome would have been different but for his counsel's error.

I do not believe it appropriate at this time to find that this case is on that portion of the prejudice spectrum which would require a new trial on direct appeal but precludes collateral relief. Again, I do not believe that finding Appellant was prejudiced by his counsel's failure to seek an involuntary manslaughter instruction is appropriate at this time. Instead, I believe that such a determination should only be made after the PCRA court holds an evidentiary hearing regarding whether counsel's trial strategy was reasonable. *See Green,* 957 A.2d at 1243 (Colville, J. concurring in part and dissenting in part).

Because I believe Appellant is entitled to an evidentiary hearing on the two claims I have addressed above, I must respectfully concur in part and dissent in part.