J. S55045/18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| FAHMEE GRANVILLE, | : | No. 233 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, November 28, 2017,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0003796-2017

BEFORE:  OLSON, J., STABILE, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED OCTOBER 23, 2018**

Fahmee Granville appeals from the November 28, 2017 judgment of sentence entered in the Court of Common Pleas of Delaware County following his conviction in a jury trial of aggravated assault, simple assault, and resisting arrest.[1]  The trial court imposed an aggregate sentence of 24 to 48 months of incarceration followed by one year of probation.  We affirm.

The trial court set forth the following factual history:

> On May 27, 2017 at 2:16AM there was a 911 telephone call for a possible drug overdose at 7044 Veronica Road, Upper Darby Township, Delaware County, Pennsylvania.  On May 27, 2017 while working the 11:00PM to 7:00AM shift, Upper Darby Police Officer, Officer Michael DeHoratius, received [a] dispatch from DELCOM following that 911 call.  As Officer DeHoratius was around the corner from the address provided, and he headed to

---

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 2701(a)(1), and 5104, respectively.

the location to back up other officers and EMS personnel. As he was so close to 7044 Veronica Road, Officer DeHoratius arrived on location first, within a minute of the DELCOM transmissions, and was the first responder to enter the residence. Officer DeHoratius testified that upon arrival to 7044 Veronica he was aware that the caller was the Mother of the person who was non[-]responsive in the house.

Officer DeHoratius testified that upon arrival it was his goal to gather information and assess the needs to the persons in the residence; he was met at the front door by the person who called 911 and was directed to the kitchen area of the house. Upon entry to the kitchen Officer DeHoratius saw a black male lying face up on the floor clothed in only his underwear, who appeared to be breathing but unresponsive. At the Trial, Officer DeHoratius identified the black male lying unresponsive in the kitchen area as Appellant. Upon locating Appellant lying on the kitchen floor, Officer DeHoratius was able to immediately detect a strong odor of alcohol from his person. Officer DeHoratius attempted to rouse Appellant by applying a sternum rub, which had no effect on Appellant's state of unconsciousness. As Officer DeHoratius was attempting to rouse Appellant he was also assessing the scene, he was looking around for contraband and any indications of drug use but was unable to find either.

After the sternum rub did not arouse Appellant, Officer DeHoratius began to check Appellant's pupil dilation. While checking to see Appellant's pupils Appellant began [sic] startled and woke up. Appellant then immediately yelled at Officer DeHoratius "I am going to fuck you up." To Appellant's statement, Officer DeHoratius announced that he was a police officer who was there to help him. Appellant's Mother also began telling Appellant that the police were called to help him.

Appellant attempted to get to his feet but initially was off balance and fell back down. Officer DeHoratius and Appellant's Mother were both attempting to calm down Appellant as Appellant continued to try to stand and confront Officer DeHoratius. When Appellant was successful in getting to a standing position, and in an aggressive stance which the Officer demonstrated for the men and women of the jury, Appellant stood before Officer DeHoratius with his fist clenched at his sides telling him again, "I am going to get you now." At this point Office [sic] DeHoratius radioed DELCOM for an officer assist. Appellant grabbed at Officer DeHoratius around the bicep area and his neck and the two men entered into an intense struggle that moved them from the kitchen area to the living room area. During the struggle another first responder, a paramedic known as Doc attempted to assist Officer DeHoratius, unsuccessfully. During the struggle, Appellant's Mother was hit.

Paramedic Dwight "Doc" Warren was the second person on scene on May 27, 2017. Upon arriving, Doc was able to observe an Officer and Appellant struggling in the kitchen area of the house. Doc testified that he attempted to assist Officer DeHoratius as it appeared to him that Appellant was not being controlled and Doc was able to put his hands on Appellant; however, he lost his grip on Appellant and Officer DeHoratius and Appellant continued to struggle.

Officer DeHoratius was struck in the neck and was grabbed on the bicep by Appellant. Appellant attempted to grab the Officer's vest in the neck area in an attempt to drag him down to the ground. At one point during the extended and intense struggle, Appellant was pinned by Officer DeHoratius[;] however[,] Appellant was able to maneuver them both so that the struggle still continued. While Appellant was pinned, Officer DeHoratius told Appellant to stop fighting but Appellant continued to fight the Officer. Officer DeHoratius described it as a

grappling struggle, a violent struggle that ended when they both "went to the ground hard." Officer DeHoratius noted that when they both fell to the ground, Appellant did continue to flail his arms and legs. Other officers began to arrive and assist Officer DeHoratius at this time. Officer DeHoratius let the other officers handle Appellant at this time and he returned to the police station to complete a report.

After arriving back at the police station, Officer DeHoratius realized that he was in pain, he was sore and he discovered bruises on his bicep and scratches on his neck. Pictures were taken of Officer DeHoratius' injuries. Officer DeHoratius' neck was all red; he had scratches all on his right shoulder area, neck and bicep. The next day the Officer still had scratches on his body as well as a large bruise on his bicep. The bruise suffered by Officer DeHoratius on his bicep was on the entire portion of his bicep.

Officer DeHoratius credibly testified that both he and Appellant's Mother explained that he was a police officer called to the location to help him and he also remembered Appellant's Mother screaming to stop, although he was unsure who that command was directed towards. Officer DeHoratius also credibly testified that he did not call out [sic] of work nor did he miss a shift as a result of his injuries sustained on May 27, 2017.

Trial court opinion, 2/7/18 at 4-7 (record citations omitted).

The trial court set forth the following procedural history:

Despite the fact that Appellant was represented by counsel, Appellant filed a timely *pro se* Motion for Reconsideration on December 1, 2017. On December 12, 2017, as Appellant was represented by Counsel and as hybrid representation is a legal nullity, this Court issued an Order Denying and Dismissing the *pro se* Motion for Reconsideration.

- 4 -

> Appellant, also **pro se**[,] filed a timely appeal on December 12, 2017. On December 14, 2017, this Court issued an Order requiring Appellant's Counsel of record to submit a Concise Statement of [Errors] Complained of on Appeal [pursuant to Pa.R.A.P. 1925(b)] within twenty[-]one days. Appellant's Counsel of record filed a second timely, now counseled appeal, on December 27, 2017, this Court then issued a second request to submit a [Rule 1925(b) statement] on January 3, 2018. On January 5, 201[8], Counsel of Record submitted a Concise Statement . . . .

**Id.** at 3.

Appellant raises the following issue for our review:

> [Whether] the [trial] court erred when it instructed the jury, in response to a question the jury posed to the court, that the police officer in question was acting in the performance of his duty at the time in question[?]

Appellant's brief at 5.

"[A] trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." **Commonwealth v. Charleston**, 94 A.3d 1012, 1021 (Pa.Super. 2014), **appeal denied**, 104 A.3d 523 (Pa. 2014) (citation omitted). "A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue." **Commonwealth v. Sandusky**, 77 A.3d 663, 667 (Pa.Super. 2013). Moreover, Pennsylvania Rule of Criminal Procedure 647(D) authorizes the trial court to provide additional instructions to the jury after the jury has

retired to consider its verdict. Pa.R.Crim.P. 647(D). This court has explained that:

> [t]he scope of supplemental instructions given in response to a jury's request rests within the sound discretion of the trial judge. There may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion.

*Commonwealth v. Davalos*, 779 A.2d 1190, 1195 (Pa.Super. 2001), *appeal denied*, 790 A.2d 1013 (Pa. 2001) (citations omitted).

Here, during deliberations, the jury submitted the following question to the trial court in a written note: "Is the medical assessment and potential administration of Narcan[] legally a duty of Michael DeHoratius as the first responder/police officer?" (Notes of testimony, 9/13/17 at 261.) The trial court heard argument on the issue of whether Officer DeHoratius was under a legal duty to administer Narcan. (*Id.* at 260-264.) Following argument, the trial court answered the jury's question by writing "yes" on the note and returning the note to the jury. (*Id.* at 264.)

Appellant complains that "the [trial] court's simple answer of 'yes' regarding Officer DeHoratius and his handling of Narcan invades on the jury of its role as the finder of fact" with respect to the duty elements of

aggravated assault and one element of resisting arrest.[2] (Appellant's brief at 16.) With respect to aggravated assault, a person commits that crime if he attempts to cause or intentionally or knowingly causes bodily injury to a police officer "in the performance of a duty." 18 Pa.C.S.A. § 2702(c)(3). With respect to resisting arrest, a person commits that crime "if with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty," creates a substantial risk of bodily injury. 18 Pa.C.S.A. § 5401.

In its Rule 1925(a) opinion, the trial court stated that it did not answer the jury's question because it detected the jury was confused, but that it exercised its discretion by "simply answer[ing] a question posed about the

---

[2] We note that the trial court and the Commonwealth contend that appellant failed to preserve this issue for appeal by failing to place a specific objection on the record that the trial court's response to the jury's question constituted an abuse of discretion because the trial court usurped the jury's fact-finding function on the issue of whether Officer DeHoratius was in the performance of a duty and/or was discharging a duty when the assault occurred. The record reflects that at the conclusion of argument on the issue of whether Officer DeHoratius was under a duty to administer Narcan, the following took place:

> THE COURT: . . . I'm going to write down rather than elaborate and explain it, I'm going to just write yes. I will note your exception on the record.
>
> [DEFENSE COUNSEL]: Thank you.

Notes of testimony, 9/13/17 at 264.

Because the trial court stated that it would note appellant's exception on the record at the conclusion of argument, we decline to find waiver.

duties of a police officer as a first responder." (Trial court opinion, 2/7/18 at 15.)

Our review of the record reveals that when Officer DeHoratius arrived at the scene in response to a DELCOM dispatch following the 911 call placed by appellant's mother, he arrived in a marked patrol vehicle and in full uniform. (Notes of testimony, 9/13/17 at 15-17.) The officer testified that as the first responder, he was to gather "some quick information and assess [appellant]." (*Id.* at 17.) Although the officer testified that he has been trained to handle opioid overdoses and administer Narcan, nothing in the record indicates that appellant suffered an opioid overdose or that the officer administered Narcan. In fact, Officer DeHoratius testified that during his assessment of appellant, the officer smelled alcohol emanating from appellant's person. (*Id.* at 23.) The officer further testified that he did not observe any indication that appellant may have been on heroin or opioid pills. (*Id.* at 23-24.) Therefore, appellant's complaint that the trial court's affirmative answer to the jury's question "regarding Officer DeHoratius and his handling of Narcan" usurped the jury's fact-finding role lacks merit. Clearly, the trial court properly exercised its discretion in providing a simple answer to the jury's question regarding a police officer's role as a first responder.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/18