J-S31044-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA     :     IN THE SUPERIOR COURT OF
                                 :            PENNSYLVANIA
                                 :
             v.                  :
                                 :
                                 :
                                 :
JAMES F. REILLY                  :
                                 :
           Appellant             :     No. 604 EDA 2022

Appeal from the PCRA Order Entered February 2, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005799-2017

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED OCTOBER 20, 2022**

James F. Reilly appeals from the February 2, 2022 order dismissing his

petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A.

§§ 9541-9546.  After careful review, we affirm.

The PCRA court summarized the relevant facts and early procedural

history of this case as follows:

> On March 20, 2017, at approximately 7:25 p.m.,
> police officers were dispatched to 55 Millstone Court
> in Langhorne, Middletown Township, Bucks County, to
> investigate an alleged DUI incident.  Officers were
> dispatched in response to an anonymous caller that
> reported his male neighbor arriving home, appearing
> intoxicated, and driving a black Jeep Laredo that was
> damaged from an accident. Upon arrival, at
> approximately 7:35 p.m., Officer Mary Felt, and later
> Officer Russo, observed the Jeep Laredo in the cul-de-
> sac and observed that the vehicle's passenger side

_____

[*] Former Justice specially assigned to the Superior Court.

front bumper and quarter panel were smashed, and the front tire was destroyed. Officer Felt saw [Appellant] in the garage and spoke to him. Officer Felt noticed an odor of alcohol, that Appellant's speech was slurred, and his eyes were bloodshot and glassy. Officer Felt asked Appellant if he had been drinking and Appellant told Officer Felt that he had drunk a fifth of brandy, a fifth of vodka, and had purchased a ball of cocaine and used cocaine earlier in the day, but not since he got home. Officer Russo, who had been called to the scene by officer Felt, then conducted a field sobriety test which showed that Appellant was intoxicated. Appellant was then taken into custody and transported to St. Mary's Hospital where blood was drawn for a BAC test, which subsequently revealed, consistent with his statement to police, that Appellant's blood alcohol content was .172% as well as the presence of Alprazolam and cocaine.

. . . .

On April 18, 2018, Appellant filed an Omnibus Pretrial Motion seeking to suppress the results of the blood test. On May 14, 2018, Appellant then entered a plea of Nolo Contendere and sentencing was deferred for house arrest screening. On July 25, 2018, Appellant filed a Motion to Withdraw his plea. On July 31, 2018, the Court issued an Order scheduling a hearing on Appellant's Motion to Withdraw his plea for August 24, 2018. On August 24, 2018, the hearing was held, and the Honorable Judge James McMaster granted Appellant's motion to withdraw his plea.

A Jury Trial commenced on March 11, 2019 and concluded on March 12, 2019. During pre-trial hearings, Appellant moved to suppress the 911 call made by an anonymous caller who was not going to be available to testify at trial and thus would not be subject to cross-examination. The contents of the 911 call were generally that a neighbor observed Appellant driving his vehicle home, at approximately 7:20 p.m., and the neighbor observed that the vehicle appeared to have been in an accident and Appellant appeared intoxicated when he exited the vehicle. After listening

to the call, the Court explained during a discussion/oral argument portion of the proceeding, that it was concerned that this anonymous caller states that he observes Appellant appearing intoxicated but does not say how or why he thinks Appellant was intoxicated. Ultimately this Court, which had indicated its concern that such opinion of intoxication would come into evidence without being subjected to cross examination, expressed during the discussion/oral argument that it was inclined to not play the call for the jury, but would likely permit the police to testify to receiving this anonymous 911 call at such and such a time and the generic conduct described on the call to the extent that it prompted police to respond, and the actions police took on scene, although this Court had not yet made a final ruling.

After a brief recess, the Commonwealth and Defense Counsel explained to this Court that they had reached a stipulation that the 911 call would be played for the Jury so long as Defense Counsel could pursue its theory that the anonymous 911 caller, a neighbor of Appellant, bore animus towards Appellant and was potentially fabricating events. Upon hearing this agreement by counsel this Court then explained that the Court would give a cautionary instruction that the jury should disregard the caller surmising that Appellant was intoxicated and that the caller saying such is not evidence of intoxication.

PCRA court opinion, 4/21/22 at 1-4 (citations to notes of testimony omitted).

Following a two-day trial, the jury found Appellant guilty of driving under the influence ("DUI") – general impairment; DUI – highest rate of alcohol; DUI – controlled substance, Schedule II or III; DUI – controlled substance, metabolite; DUI – controlled substance, impaired ability; and DUI – controlled

substance, combination of alcohol and drugs.[1]  The trial court also found Appellant guilty of the summary offense of careless driving.[2]  On June 21, 2019, Appellant was sentenced to an aggregate term of 7 to 23 months' imprisonment, followed by 2 years' probation, plus fines.[3]

On July 17, 2019, Appellant filed a *pro se* petition for reconsideration of sentence.  Before the trial court could rule on his petition, Appellant filed a *pro se* notice of appeal to this Court on July 19, 2019.  On October 7, 2019, trial counsel filed a petition to withdraw as counsel.  On that same date, Appellant filed a timely *pro se* PCRA petition.  The trial court subsequently granted trial counsel's petition to withdraw and appointed new counsel[4] to represent Appellant on direct appeal and in his PCRA proceedings.  Appellant subsequently withdrew his direct appeal to litigate the PCRA.

On December 23, 2020, PCRA counsel filed an amended petition on Appellant's behalf which raised several claims of ineffective assistance of trial counsel.  Following an evidentiary hearing on July 1, 2021, the PCRA court

---

[1] 75 Pa.C.S.A. §§ 3802(a)(1), 3802(c), 3802(d)(1)(ii), 3802(d)(1)(iii), 3802(d)(2), and 3802(d)(3), respectively.

[2] 75 Pa.C.S.A. § 3714(a).

[3] Appellant was represented at his jury trial and sentencing by Jeffrey G. Velander, Esq. (hereinafter, "trial counsel").

[4] Patrick McMenamin, Jr., Esq. (hereinafter, "PCRA counsel").

- 4 -

entered an order dismissing Appellant's petition on February 2, 2022. This timely appeal followed on February 22, 2022.[5]

Appellant raises the following issues for our review:

[1.] DID THE [PCRA] COURT ERR IN DENYING APPELLANT'S PCRA CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE IN HIS REPRESENTATION AT TRIAL WHERE COUNSEL AGREED TO ALLOW THE PROSECUTION TO ADMIT INTO EVIDENCE, AND PLAY FOR THE JURY'S CONSIDERATION, THE TAPE-RECORDING OF AN ANONYMOUS 911 PHONE CALL REQUESTING THAT THE POLICE RESPOND TO DEFENDANT'S HOME:

    A. BECAUSE BY AGREEING TO THE ADMISSION OF THE 911 TAPE INTO EVIDENCE, AND ALLOWING THE JURY TO HEAR THE DISPATCH CALL, TRIAL COUNSEL ALLOWED THE ONLY EVIDENCE OF [APPELLANT'S] DRIVING NEAR THE TIME OF THE POLICE ARRIVAL ON SCENE TO BE PLACED BEFORE THE JURY;

    B. ALSO, BY AGREEING TO THE ADMISSION OF THE 911 TAPE INTO EVIDENCE, TRIAL COUNSEL ALSO ALLOWED THE JURY TO HEAR PREJUDICIAL OPINION EVIDENCE FROM BOTH THE ANONYMOUS CALLER AND THE 911 DISPATCHER, THAT [APPELLANT] WAS INTOXICATED; AND,

    C. FINALLY, BY AGREEING TO THE ADMISSION OF THE 911 TAPE INTO EVIDENCE, RATHER THAN COMPLETING THE SUPPRESSION HEARING, TRIAL COUNSEL PRECLUDED [APPELLANT] FROM HAVING ANY OPTION OF APPEAL IF

---

[5] Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

> THE TRIAL COURT HAD NEVERTHELESS DENIED SUPPRESSION AND ALLOWED THE TAPE TO BE PLAYED FOR THE JURY OR ALLOWED THE JURY TO HEAR OF THE SUBSTANCE OF THE 911 CALL THROUGH OTHER TESTIMONY?

Appellant's brief at v.

Proper appellate review of a PCRA court's dismissal of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa.Super. 2014) (citation omitted). "This Court grants great deference to the findings of the PCRA court, and we will not disturb those findings merely because the record could support a contrary holding." *Commonwealth v. Patterson*, 143 A.3d 394, 397 (Pa.Super. 2016) (citation omitted). In order to be eligible for PCRA relief, a defendant must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors listed at 42 Pa.C.S.A. § 9543(a)(2). These issues must be neither previously litigated nor waived. 42 Pa.C.S.A. § 9543(a)(3).

The crux of Appellant's argument on appeal is that his trial counsel was ineffective for agreeing to the admission of the anonymous 911 call into evidence. Appellant's brief at 9-24.

To prevail on a claim of ineffective assistance of counsel under the PCRA, a petitioner must establish the following three factors: "first[,] the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that Appellant was prejudiced."

***Commonwealth v. Charleston***, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), ***appeal denied***, 104 A.3d 523 (Pa. 2014). The inability to establish any one prong of the ineffectiveness test will cause a claim to fail. ***Commonwealth v. Hanible***, 30 A.3d 426, 439 (Pa. 2011), ***cert. denied***, 568 U.S. 1091 (2013).

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014) (internal quotation marks omitted; some brackets in original), citing 42 Pa.C.S.A. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." ***Commonwealth v. Ousley***, 21 A.3d 1238, 1242 (Pa.Super. 2011) (citation omitted), ***appeal denied***, 30 A.3d 487 (Pa. 2011). Additionally, "[c]ounsel will not be deemed ineffective for failing to raise a claim that has no merit." ***Commonwealth v. Johnson***, 815 A.2d 563, 590 (Pa. 2002) (citation omitted).

Upon review, we find that Appellant's ineffectiveness claim fails because he failed to satisfy second prong of the aforementioned test; namely, that trial counsel did not have a reasonable strategic basis for his actions.

The record reflects that trial counsel's testimony at the July 1, 2021 PCRA hearing demonstrates that he had a reasonable basis for stipulating to the admission of the 911 call, given his chosen defense strategy to impeach the caller's credibility, and when faced with the alternative outcome of the trial court suppressing the call itself but allowing the Commonwealth to elicit its subject matter through the testimony of the responding officer.

Specifically, trial counsel testified at length with regard to the strategy he employed:

> Q.   What was the goal of the defense?
>
> A.   Goal of the defense was [Appellant] had what we call a glove box defense, that is, there – he was operating the vehicle. He was upset for some reason, and then he began to drink, and in his case also ingested some controlled substances after driving. The goal was to establish that, you know – obviously the law is a test within two hours of driving. The goal was to establish that he was not operating a motor vehicle after he had been drinking, but he had been drinking after he operated the vehicle.
>
> . . . .
>
> Q.   During the break, after arguing as to the inadmissibility of the [911] audio tape and then coming back into court and agreeing to the admissibility of the audio tape, what discussions did you and [Appellant] have in the hallway or conference room?
>
> A.   Well, we discussed the issues regarding the tape. The — a couple things. The — once the Court had agreed that it was going to permit the policemen to testify as to the time of the call and the nature of the call, then we were faced

with the position of the call, the call being made, the nature of the call, the fact that the officers arrived at the scene, as you said, 12 to 15 minutes. I thought it was 12 minutes, but whatever, after the call was received, and that when the policemen arrived at the scene, they identified [Appellant] and his state at the time and all of the rest of it. And that seemed to be at least enough in my mind to place him within that two-hour window. So the idea, once the Court had indicated that it was going to rule upon the motion in that fashion, the idea was to play the call so that [Appellant] could testify as to the animus of the caller.

And the call itself was strange. It was sort of graphic. It was — in my mind, it was almost as though the caller was reading from a script or something. And we thought that — I thought that [Appellant] agreed with me. Evidently he didn't given this motion, but I thought [Appellant] agreed with me that it was the best idea to have the jury listen to this and then argue about it as opposed to try to deal with a statement from a policemen that they received a call there was vehicle and that this person was intoxicated, and it was at such and such a place, and be confronted with the fact that [Appellant] was there. It was his vehicle, and he was in that — he was in that state.

Q: Did you discuss with him that it seemed to you that the caller was reading from a script?

A: We discussed that basic nature. We discussed the fact that we thought that the — that the caller was inventing facts as he went along. And [Appellant] specifically indicated to me that what the caller had related had not occurred.

One thing that was a little different was that as I recall, the caller said that the vehicle had driven into the driveway, whereas the rim marks, because there was a — one of the wheels

had left or had — I guess what happened was one of the tires had been punctured to the point where it was inoperative, and there were rim marks that were testified to by one of the policemen who was present that indicated that the vehicle came into the cul-de-sac and, and, and went in a circular direction in the cul-de-sac a little bit away from [Appellant's] house toward the house of this person whom he believed to be the anonymous caller and did not go into the driveway, whereas the caller had said that they had gone into the driveway, so there were some — there were some issues that, that could be exploited.

. . . .

Q:   Do you agree that had you not agreed to the admission of the audio tape, and the judge allowed it anyway, that was then a potential appeal issue in the event of a conviction?

A:   Oh, that would have been an appeal issue, of course.

Q:   And do you agree that by agreeing to admission of the tape, any potential appeal issue was then essentially forfeited?

A:   Yes. It was a decision as to whether or not to attempt to win the trial or preserve an appeal issue. Frankly, in a DUI case with the sentences ordinarily being a minimum under one year, ordinarily the defendant has served the minimum prior to the resolution of any appeal, so that's — that's one of the problems with DUI cases, although I do appreciate the fact that by, by agreeing to admit it as, as this compromise, why, did that forego an appeal.

Notes of testimony, 7/1/21 at 10, 15-18.

Generally, counsel's assistance is considered effective if he chose a particular course of conduct that had some reasonable strategic basis designed to effectuate his client's interests. ***Commonwealth v. Ali***, 10 A.3d 282, 291 (Pa. 2010). Following our careful consideration, we find that trial counsel has satisfied this burden in this case.

Accordingly, we conclude that the PCRA court did not err in concluding that Appellant's ineffectiveness claim warrants no relief and affirm its February 2, 2022 order dismissing Appellant's PCRA petition.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 10/20/2022*